[Crim. No. 3389. Second Appellate District, Division One.—November 15, 1940.]

THE PEOPLE, Respondent, v. HERMAN ROEDER, Appellant.

Frederic H. Vercoe, Public Defender, and William B. Neeley, Deputy Public Defender, for Appellant.

Earl Warren, Attorney-General, and Lewis Drucker, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellant was found guilty of the crime of burglary in the second degree by the court sitting without a jury, whereupon he made a motion for a new trial which was denied. The proceedings were then suspended and appellant was granted probation on condition that he serve one year in the county jail and pay a fine of $100. He prosecutes this appeal from said order denying his motion for new trial, relying upon the following grounds for a reversal thereof: (1) that the verdict is contrary to the evidence; (2) that the evidence, as a matter of law, is insufficient to sustain the verdict; (3) that the court erred in overruling his objections to certain questions asked by the district attorney, the "only purpose to be served" thereby being "to degrade and prejudice him in the eyes of the trial court".

Following is a brief summary of the facts upon which the instant prosecution was founded:

One Ivar L. Kennedy, a resident of the Californian Hotel in the city of Los Angeles, left his room in the hotel between the hours of 2:30 and 3:00 o'clock in the afternoon of December 12, 1939, and upon his return thereto between 6:00 and 7:00 o'clock that evening, he discovered that his clothes and ·a Gladstone bag, upon which his full name was embossed in gold letters, were missing.

F. W. Benson, ticket agent for the Santa Fe and Burlington Trailways at San Bernardino, testified that on December 13, 1939, a Gladstone bag bearing the name "I. L. Kennedy" was left with him for checking by a young man, but he could not identify the appellant as being the particular young man who left the bag with him. When the bag had remained in his custody for about a month, ticket agent Benson opened it, secured the address of the owner, and after some correspondence with him, returned the bag to the said Ivar L. Ken-

nedy. Three months thereafter, i. e., on either March 19th or 20th, appellant called and presented to the said ticket agent at his station in San Bernardino a claim check bearing the number A–2125 and asked for the bag which had theretofore been checked under a corresponding number. To this inquiry, Benson replied that any bag left with him for more than thirty days would be sent to the claim department of the company in Los Angeles. After checking the luggage in his office, said ticket agent informed appellant that the bag had not been turned over to the claim department for the reason that it was ''a stolen bag from Los Angeles'', and that he had turned over to the police the matter of this particular check number; that if appellant would wait a moment, he (Benson) would call the police department, which he did, and when he told appellant that ''the police would be down in a few minutes'', appellant walked outside the station and Benson did not see him again until he saw him in court.

H. Burch, a member of the burglary detail of the Los Angeles Police Department, testified that he had a conversation with appellant in the San Bernardino jail on March 21, 1940, at which time appellant stated that he was employed in December, 1939, as a member of a magazine sales-crew consisting of about fifteen persons with headquarters in Los Angeles at the Californian Hotel; that on December 12, the crew was taken to San Bernardino and rooms engaged at the Stauffer Hotel, appellant and another man occupying room 49; that on December 13, appellant checked a bag at the stage depot and after staying in San Bernardino for a couple of days, he went to Tucson, Arizona, and finally to Milwaukee, returning to San Bernardino around March 18, 1940. The officer testified that appellant stated to him that he did not burglarize a room in the Californian Hotel and did not take a bag from the room, but stated that he did present a claim check at the stage depot in San Bernardino to recover his own bag and was told that the bag was a stolen bag by the ticket agent, who requested appellant to remain while he notified the police department. Officer Burch further testified that appellant told him ''he did not want to become involved in any further argument, and he walked outside and left. He was later arrested about two miles away near the railroad tracks. I asked him if the property belonged to him why he did not remain and claim his property. He stated he did not want

to have any more argument about the bag . . . I asked him why he did not remain there until the police arrived and insisted and demanded that his property be returned to him and he said he did not want to stay there and have any argument with Mr. Benson or the police either.''

Appellant took the stand in his own defense and testified that on December 12, 1939, he was employed as a salesman for the Blue Ribbon Publication Company, being a member of a sales-crew managed by one Russell Poole, and named some eighteen members of the crew; that on December 12 at about 7:30 a. m., the crew checked out of the Hotel Californian in Los Angeles and was taken to San Bernardino in three automobiles and a trailer; that each member of the crew placed his personal luggage in the lobby of the hotel and it was packed in the trailer by one Holderness. Arriving in San Bernardino at 9:30 or 10:00 o'clock in the morning of December 12, the members of the crew were transported to different points in the city to begin solicitation of business; that after leaving his bags in the lobby of the Californian Hotel, appellant next saw them in the lobby of the Stauffer Hotel in San Bernardino around 7:30 o'clock that evening, when he personally moved them to his room in the hotel. The crew remained at the Stauffer Hotel until December 17 when they went to San Diego. Appellant testified that on the night of December 16, he checked his own Gladstone bag at the stage depot, for the reason that ''I had gotten a telegram from a previous employer in Sacramento asking me to come back to work for him and I had intended to leave this crew and come back to work in Sacramento, and the manager had already told me . . . he was going back toward Wisconsin within a month or thereabouts, and Wisconsin being my home place and I had not been home two years, I decided to stay with him until he had gotten to Milwaukee and I would spend a week or two at home and quit him and then come back to work here in Sacramento. I checked the bag with the intention of leaving it until I came back to California because I had two bags. Some of the clothes in the bag I checked at the bus depot were summer clothes that I wouldn't need in Wisconsin; rather than carry both bags there I checked one bag and took the other with the clothes I needed with me.'' Appellant further testified that he returned to San Bernardino on March 20, 1940, called at the

stage depot and asked for a Gladstone bag, and that "he (Benson) told me if I wanted him to he would call the police and check up on my bag. I told him all right, he should call, and he took the—picked up the telephone and called the police department in San Bernardino and spoke to them over the phone and when he hung up the phone he turned around to me and said, 'There is an awful mixup here. I don't know what to tell you to do except as I told you, to go to the Los Angeles claim department and if you can identify your bag and the contents, they will give it to you.' And he turned around and walked out of the bus depot and left me there alone. I followed him, directly behind him, out of the bus depot and onto the street."

Appellant admitted on direct examination that he did not sign the register at the Hotel Stauffer in San Bernardino on the morning of December 12, and it was stipulated that if Bernice S. Adams were called as a witness she would testify that she was the manager of the Hotel Stauffer on December 12, 1939; that in the morning of that day Russell Poole registered there and engaged rooms for his crew and that later in the day "members of his party signed the register either each individually or Mr. Poole for them, she didn't know which, or some of the others signing for the ones who didn't sign personally, sometime in the afternoon of December 12, 1939, the register not showing the exact time when they registered actually". It was also stipulated that if the manager of the California Hotel were called as a witness, he would testify that Russell Poole, as manager of a sales-crew for a publishing company, checked his crew out of that hotel not later than 8 o'clock on the morning of December 12, 1939.

Appellant urges that the evidence is wholly inadequate to establish that appellant checked the stolen bag in San Bernardino or ever had it in his possession; also that it is impossible to tell from the record what type of parcel check was used at the stage depot since neither the check alleged to have been used, nor the duplicate claim check was offered in evidence.

While it is conceded that the evidence as to appellant's participation in the crime charged is wholly circumstantial, it is established law that guilty connection with the commission of the crime may be established by circumstantial evidence. (*People* v. *Latona*, 2 Cal. (2d) 714 [43 Pac. (2d)

260].) In the instant cause, the trial court had before it many circumstances from which it could draw a proper legal inference that the appellant was guilty as charged. Testimony was presented to the trial court, as hereinbefore outlined, showing that appellant and the owner of the missing bag lived at the same hotel; that appellant left the hotel the day the bag and its contents were found to be missing and went to San Bernardino. Although appellant testified that he went to San Bernardino with the publishing company crew early in the morning of the 12th, it was also shown that he neither registered in person, nor arrived at the Stauffer Hotel in that city until 7:30 o'clock in the evening of that day, which would support the inference that appellant remained in Los Angeles after the crew left for San Bernardino and had the opportunity to visit the room of Mr. Kennedy during the hours of December 12 when it is alleged that his bag was taken therefrom.

As was very aptly stated in the case of *People* v. *Anderson,* 37 Cal. App. (2d) 615, at 619 [100 Pac. (2d) 348], and referred to in respondent's brief, "Guilty participation may be shown by circumstantial evidence as well as by direct evidence. If the circumstances proved reasonably justify the conclusion of the jury, the reviewing court has no authority to interfere therewith. The principles applicable in such a case were recently stated by this court as follows in *People* v. *Schneider,* 36 Cal. App. (2d) 292 [98 Pac. (2d) 215] : ' . . . appellant's main attack upon the sufficiency of the evidence is based upon the fact that there is an absence of direct evidence as to the actual delivery of the check to Weyel'. It is well settled, however, that a fact relating to the guilt of an accused may be established by circumstantial as well as by direct evidence; that the right to draw proper inferences from the evidence is a function of the jury, and that as long as its conclusions do not do violence to reason, a reviewing court is not permitted to substitute its finding of the ultimate fact for that reached by the constitutional as well as the statutory arbiter thereof. (*People* v. *Latona,* 2 Cal. (2d) 714 [43 Pac. (2d) 260] ; *People* v. *Martinez,* 20 Cal. App. 343 [128 Pac. 952].) In other words, as frequently said by the courts, circumstantial evidence may be as conclusive in its convincing force as the testimony of witnesses to the overt act. (*People* v. *Nagy,* 199 Cal. 235 [248 Pac. 906] ; *People*

v. *Perkins*, 8 Cal. (2d) 502 [66 Pac. (2d) 631]), and consequently where the circumstances proved reasonably justify the conclusion of the jury expressed in its verdict, it is beyond the authority of the reviewing court to interfere therewith. (*People* v. *Latona, supra.*) Furthermore, in considering the question of the sufficiency of the evidence, the reviewing court must assume in favor of the verdict the existence of every fact which the jury could have reasonably drawn therefrom. (*People* v. *Perkins, supra.*)''

A review of the record herein reveals that the evidence was sufficient to sustain the trial court's finding of appellant's guilt.

 The questions asked by the prosecution as to whether or not appellant slept in jails at San Diego and at Elsinore on the two nights prior to his return to San Bernardino in March of 1940 were not of sufficient importance to prejudicially affect appellant's substantial rights.

The order appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 12, 1940. Carter, J., voted for a hearing.