[Crim. No. 4487.   Second Dist., Div. Two.   Oct. 17, 1950.]

THE PEOPLE, Respondent, v. SAM COLLETTA, Appellant.

(1)

Russell E. Parsons for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

McCOMB, J.—From a judgment of guilty of burglary in the second degree after trial before the court without a jury, defendant appeals.* There is also an appeal from the order denying his motion for a new trial.

## QUESTIONS

First: *Was the evidence sufficient to sustain the judgment of guilty?*

This question must be answered in the affirmative. The evidence disclosed that Felix B. Seay was the owner of a hardware store located at 7522 Sunset Boulevard, Los Angeles. On July 30, 1949 (Saturday) at approximately 5:30 p. m. he left his store which was locked. Mr. Seay did not go to his store on Sunday. Mr. Fraser, who operated a bakery next to Mr. Seay's store, on Monday, August 1, 1949, at about 3:45 a. m. heard hammering sounds emanating from the hardware store, whereupon he summoned the police. When Officer Donovan arrived at the store at approximately 4:00 a. m. on the morning of August 1st, he found that other police officers had arrived before him; that the back door of the store was open and the glass in the back window broken. The combination had been knocked off the safe and a hydraulic automobile jack was lying near the safe.

At about 4:45 a. m., Officer Donovan was driving on Hobart near its intersection with Sunset Boulevard when defendant was seen leaving a taxicab. The officer asked defendant where he had taken the taxicab, to which defendant replied "on Sunset Boulevard" near a big drive-in. Defendant was then asked why his hands were all dirty. He replied that he had been out with a friend of his named "Johnny"

---

*Defendant's brief does not conform with rule 15(a) of the Rules on Appeal (22 Cal.2d 12) in that it is not prefaced by a topical index of its contents or a table of its authorities.

and Johnny's girl friend, that his hands had become dirty when he had changed a flat tire.

He was then taken back to Sunset Boulevard and asked to point out where he had entered the taxicab. Defendant indicated a place described as Simon's Drive-in on Sunset Boulevard near Ivar.

Defendant was then taken to the Hollywood Cab Company where a cab driver named Ocha stated that he had picked defendant up on the southwest corner of Fountain and LaBrea Streets and had received a dollar from him. Defendant agreed that he had given the cab driver a dollar.

Fountain and LaBrea is about two blocks south and two or three blocks west of the hardware store, and there is no drive-in restaurant at that corner.

The officer also asked defendant where his car was, to which defendant stated that he had loaned his Buick to a friend named Ralph Fire at about 11 p. m. the previous evening so that Fire could go to the races at Del Mar, and that he expected his car would be gone for a day or two. In defendant's pocket were found three keys, one of which appeared to be an automobile key. Defendant was asked if he had a hydraulic jack in his car, to which he replied "No." Defendant stated that he had a bumper jack.

The police then accompanied defendant to his motel room at the Hollywood Star Motel on Sunset Boulevard where they met defendant's wife. In their room was a double bed and a single bed. In the single bed a man was asleep. The officer asked defendant who the man was and was told he was Johnny Tisano. Upon being awakened the man was asked his name and he stated he was Ralph Fire. Defendant and Mr. Fire were taken to the city hall and en route Mr. Fire was asked if he had been driving defendant's car, to which he replied in the negative. He said he had been with defendant until about 12:30 that night at which time they had separated.

After leaving defendant at the city hall, Officer Donovan and his partner returned to the hardware store and about 75 yards west thereof located defendant's Buick. The back end of the car had a trunk compartment, the handle of which was turned to the side, and in this compartment the officers found a tubular metal hydraulic jack handle. There was no other jack in the car and the only tool pertaining to a jack was this handle. The key which Officer Donovan had

taken from defendant's pocket was used to unlock the ignition of the Buick.

Defendant was asked how he had received two or three fresh cuts on the high part of his left hand between the thumb and index finger. He replied that he had been cut while helping his friend change a tire about a half hour prior to the time he had been taken into custody.

At the hardware store the officer had seen a hatchet which appeared to have blood on it lying on the floor in front of the safe. At the city hall defendant had been asked to stand on a newspaper. The cuffs of his trousers had been turned down and pieces of grey or greyish blue putty had fallen out. When asked if he knew what it was, defendant said "Yes. It is a piece of putty." He said he had done some work in New Mexico and that the putty had been in his pants cuffs ever since. Later defendant was taken to the rear window of the hardware store where there were found about a dozen pieces of putty. Such putty was placed in an envelope and delivered together with the putty taken from defendant's trousers cuff to a police chemist who testified that the putty found in defendant's cuff and at the hardware store were the same or of similar coloring. He did not state that the putty itself was the same in both cases.

The chemist also testified that the jack found in the store had an original or basic color of blue or bluish green, while the handle found in defendant's car was of a basic color of black, and that he had found black paint on the jack itself, particularly on the area which would receive or retain the handle, and that he had found blue paint on the jack handle. He testified that the blue paint which was on the jack handle could have come from the jack, though he could not definitely state that the blue was from the jack. Likewise the chemist stated that he could see the stain on the hatchet handle which had been found, though there was not a sufficient sample to ascertain whether it was human blood.

Defendant denied having entered the hardware store, stated that he had been at a restaurant known as Leon and Freddie's located on the Sunset Strip until about midnight when he had taken his wife to the Hollywood Star Motel and then had rejoined his friends at Leon and Freddie's. He said that he had loaned his car to Fire who was going to Del Mar. He also said that there were two Fires, one of whom was a jockey, and that he had met both Fires in Leon and Freddie's that night.

From the foregoing evidence which was entirely circumstantial, the trial court was justified in reaching the conclusion that defendant was the culprit who broke into the hardware store. In a prosecution for burglary the evidence on which a defendant is convicted may be purely circumstantial and if substantial, as in the present case, is sufficient to support the judgment of guilty. (*People* v. *Flynn,* 73 Cal. 511, 512 et seq. [15 P. 102]; *People* v. *Warner,* 25 Cal.App. 751, 754 [145 P. 545]; *People* v. *Roeder,* 41 Cal.App.2d 495, 499 [107 P.2d 92]; *People* v. *Fitch,* 73 Cal.App.2d 825, 826 et seq. [167 P.2d 211]; *People* v. *Anderson,* 37 Cal.App.2d 615, 619 [100 P.2d 348].)

*People* v. *Draper,* 69 Cal.App.2d 781 [160 P.2d 80], relied on by defendant, is clearly distinguishable on its facts from the present case. In the cited case the only evidence against the defendant was the fact that several minutes after the door to the service station was observed to be open, he was seen standing beside a building 50 to 75 feet away. Very properly the court held that such evidence was insufficient to sustain a judgment of guilty.

■ Second: *Did the trial court abuse its discretion in denying defendant's motion for a new trial?*

This question must be answered in the negative. On a motion for a new trial defendant filed an affidavit alleging that he had made a diligent but unsuccessful attempt to locate Jack Nash and Ralph Fire prior to the time of his trial. However at the time of trial he testified that Jack Nash was in Chicago, and that Ralph Fire was in Illinois. Thus it appears he knew where they were located, but there is no showing that he made any effort to produce either or both of them at the trial nor that he made an attempt to obtain their depositions. He also claimed in his affidavit that upon a retrial he could produce a Mr. Polino, a James Pizzo as well as a Mr. Harding who had observed his being searched by the police officers. The testimony of these last three witnesses would have been merely cumulative of testimony given at the time of trial. ■ The rule is established that the determination of the question whether newly discovered evidence which is cumulative evidence is of such a nature as to have produced a different result if it had been presented on the trial, rests largely in the sound discretion of the trial court, whose determination will not be disturbed on appeal in the absence of a

showing of an abuse of discretion. (*People* v. *Blain,* 46 Cal. App.2d 844, 847 et seq. [117 P.2d 27].)

In the present case there is not alone a failure to show that the trial court abused its discretion, but it appears from the record that its discretion was wisely exercised in the promotion of substantial justice.

The judgment and order are and each is affirmed.

Moore, P. J., and Wilson, J., concurred.