[Crim. No. 3652. In Bank.—February 28, 1934.]

THE PEOPLE, Respondent, v. GEORGE HALL, Appellant.

S. Luke Howe, S. F. Meldon, William V. Cowan and Marshall B. Woodworth for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

WASTE, C. J.—Defendant appeals from a judgment of conviction carrying the extreme penalty and from orders respectively denying motions for new trial and in arrest of judgment.

We have exhaustively examined the record in this case and unhesitatingly declare that the evidence discloses a ruthless and cold-blooded homicide justifiably characterized by the jury in its verdict as murder in the first degree. On March 8, 1933, the witness Ballinger, a United States customs operator or patrol inspector, had occasion to search an automobile in Seattle Heights, which is approximately fifteen miles north of the city of Seattle in the state of Washington. Upon such search he discovered two Thompson submachine guns and six automatic pistols. These weapons were new and still in the factory cartons. As he was about to take the driver of the car into custody he was approached from the rear by the defendant herein and rendered unconscious by several blows on the head. When he regained consciousness he found himself handcuffed and locked in the luggage compartment of a moving automobile. Several hours later the car was stopped and the witness removed from his place of imprisonment. A conversation followed between defendant and his companion, referred to throughout the trial as

John Doe, as to the disposition to be made of the witness, the defendant saying "Let's 'bump' him." This suggestion was rejected and the witness again bundled into the luggage compartment of the car. After several more hours of driving the car was again stopped and, under cover of darkness and while blindfolded, the witness was removed to another car accompanied by John Doe. He was later left handcuffed to a tree. The defendant proceeded on alone. Later he picked up a hitch-hiker who was with him at the time of the homicide and who testified upon the trial for the prosecution. As the defendant's car entered the city of Yreka in Siskiyou County, shortly after 7 o'clock on the evening of March 10, 1933, it was pursued by two automobiles containing the decedent, a state traffic officer, the sheriff and two of the latter's deputies, these officers having in the meantime received information over the teletype that defendant was approaching. The sheriff's car, with its siren screeching, raced alongside of the defendant's car and defendant was commanded to stop. In disregard of this command defendant increased the speed of his car in an effort to elude his pursuers. After several unsuccessful attempts to stop defendant's car by turning off the ignition, the hitch-hiker, who had previously innocently joined defendant, succeeded in bringing the car to a halt by pulling on the emergency brake. The decedent thereupon came alongside of defendant's car and informed him that the sheriff was approaching. At the time, decedent was wearing his highway patrol officer's badge in plain view on the outside of his leather jacket and was also wearing his insignia on his cap. Without a moment's hesitation, and in the immediate view and presence of his hitch-hiker companion, the defendant pulled out an automatic pistol and shot the decedent. He died almost instantly. In the shooting affray that followed between defendant and the other officers, a deputy sheriff was also shot dead. The defendant was wounded and after a short chase and struggle was taken into custody. Upon the trial of the cause defendant took the stand in his own defense and admitted the shooting. He testified, however, that he did not know that decedent was an officer and that he shot him because he thought decedent was reaching for a gun. The jury rejected this defense and properly so in view of the companion hitch-hiker's testi-

mony that he had informed defendant prior to stopping the car that the pursuers were officers of the law. This witness also testified that the only movement made by the decedent at the time was to motion the defendant back into the car.

We will now take up defendant's several assignments of error. It is first urged that the court below erred in denying his motion for change of venue. The motion was supported by two affidavits, signed, respectively, by the defendant and a resident of Siskiyou County, wherein it was averred that the decedent was well known and exceedingly popular in the county and that his demise had given rise to lynching threats against the offender. In opposition thereto the sheriff and the district attorney filed affidavits wherein each averred that while the homicide had caused some excitement in the county there had been no threats or demonstrations against the defendant, each affiant giving it as his opinion that the defendant would and could be assured of a fair and impartial trial. Under the circumstances, and because of its proximity to and familiarity with conditions prevailing in the county, we are not prepared to say that the trial court abused the discretion vested in it when it denied the motion for change of venue. (*People* v. *Congleton*, 44 Cal. 92, 95; *People* v. *Goldenson*, 76 Cal. 328, 337–339 [19 Pac. 161].)

Nor do we perceive any abuse of discretion in the denial of defendant's motion for a continuance of the trial. (*People* v. *Goldenson*, *supra*.) The record is silent as to the grounds urged for the requested continuance. It appears, however, that defendant was arraigned on March 16, 1933, and "by agreement of respective counsel the court fixed Monday, April 3rd, 1933 . . . as the time for trial". It was not unreasonable on the part of the court to require defendant to stand trial on the agreed date, eighteen days subsequent to his arraignment.

At the time of his arraignment defendant, who was accompanied by counsel, remained mute whereupon the court below directed the clerk to enter a plea of "not guilty" on behalf of defendant. Such a plea was entered. Subsequently, and at the inception of the trial, counsel for defendant tendered a plea of "not guilty by reason of insanity" in addition to the plea on the general issue entered at the time of defendant's arraignment, contending that since

the separation of these two pleas (Stats. 1927, p. 1148) it is incumbent on the court to direct the entry of both pleas when a defendant stands mute upon his arraignment. The court rejected the tendered plea on the ground it came too late. We find no error in this ruling. Had the legislature intended the result contended for by defendant it undoubtedly would have amended section 1024 of the Penal Code when in 1927 it provided for a separation of the two pleas above mentioned. Since 1880 the cited section has provided that "If the defendant refuses to answer the indictment or information by demurrer or plea, a plea of not guilty must be entered." The court below fully complied with this section. No provision is therein made for the entry of a plea of "not guilty by reason of insanity". Moreover, section 1016 of the same code declares that "A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged . . . " In other words, for a defendant to avail himself of the defense of insanity, it is essential that he seasonably offer such a plea.

█ As already stated, the defendant was arraigned on March 16, 1933, at which time the court, by reason of defendant remaining mute, directed the entry of a plea of "not guilty". Thereafter and on March 28, 1933, an amended information was filed. So far as the homicide of which defendant stands convicted is concerned, the charging part of the amended information is identical with the original. There was added, however, a reference to the suffering by defendant of a prior felony conviction. On March 29, 1933, the defendant was arraigned on the amended information at which time he admitted having suffered the prior felony conviction. No other or additional plea was offered or received. At the conclusion of the prosecution's case defendant moved for a dismissal on the ground that no issue had been joined under the amended information. The motion was properly denied. The homicide charge was identical in the original and amended informations. There was no necessity, therefore, for a repetition of the plea on the general issue. The cause proceeded to trial and defendant at all times received the benefit of a plea of "not guilty". It follows that defendant's sub-

stantial rights suffered no detriment by reason of the failure to repeat the plea. (*People* v. *Thal*, 61 Cal. App. 48, 51, 52 [214 Pac. 296]; *People* v. *White*, 47 Cal. App. 400, 403 [190 Pac. 821]; *People* v. *Tomsky*, 20 Cal. App. 672, 678–686 [130 Pac. 184].)

The point is made that the court erred in denying defendant's challenges for cause as to certain jurors. On this point the defendant's brief states that "Inasmuch as the reporter's transcript omits the proceedings relating to the impanelment of the jury, appellant must reserve his presentation of this point until that part of the record is brought up under an order of this court *and proceedings which are to be instituted for that purpose.*" Defendant has not instituted proceedings for diminution of the record and consequently we have not now before us that part of the record having to do with the selection of the jury. Inspection of the record discloses, however, that there has been included therein the *voir dire* examination of two of the jurors challenged for cause by the defendant. Each of said challenges was, in our opinion, properly denied. While it is true that the early portion of counsel's examination of these particular jurors tends to disclose some confusion in their respective minds and tends to indicate that each entertained an opinion requiring evidence to remove, the situation was materially clarified by the trial court's subsequent examination of said jurors at the conclusion of which it was immediately apparent that as veniremen they would enter upon a consideration of the cause with open minds and would be governed solely by the evidence adduced and the court's instructions on the law. Nowhere does it appear that defendant was required to accept an objectionable juror. On the contrary, the transcript indicates that both sides were satisfied with the jury finally selected to try the cause.

It is next urged that the court erred in admitting the testimony of the witness Ballinger, the federal officer, who testified that shortly prior to the homicide he was knocked unconscious, imprisoned and unwillingly transported in an automobile by the defendant and his confederate. Defendant objected to the introduction of this evidence as being too remote and as tending to establish the commission of a separate and independent offense. The evidence was offered by the prosecution and admitted by the court for the

limited purpose of showing motive. The jury was instructed that it was to be considered for that purpose alone. It was admissible for the purpose designated as it tended to establish that in perpetrating the homicide it was the defendant's desire to avoid arrest for the prior offense committed against the witness Ballinger. That the evidence complained of tended to show the commission of such prior and separate offense, or tended to prejudice the defendant before the jury, did not make it inadmissible. (*People* v. *Rocco*, 209 Cal. 68, 71, 72 [285 Pac. 704]; *People* v. *Nakis*, 184 Cal. 105, 114 [193 Pac. 92]; *People* v. *Walters*, 98 Cal. 138, 141 [32 Pac. 864].)

Defendant complains of the instruction by which the jury was informed of the purpose for which this particular evidence was admitted. The instruction contains a correct statement of the law and is not objectionable in the particulars urged by defendant.

Nor do we find any error in the giving of the instruction on flight. As already related, the defendant immediately fled the scene of the shooting. He was captured only after a chase and physical encounter. Under the authorities, it was proper to inform the jury that it might consider this fact in determining defendant's guilt or innocence.

Defendant next urges that the court below erred in refusing three requested instructions having to do with the authority of state traffic officers and with the authority, or lack of authority, of peace officers generally to arrest without a warrant. We find no error in the court's refusal to give the proposed instructions. The entire subject was fully and properly covered by five instructions given to the jury and appearing at pages 373–375 of the reporter's transcript. (Secs. 834–837, Pen. Code.)

What has been said sufficiently answers defendant's contentions on appeal. It follows that the judgment and orders appealed from must be, and each is, affirmed.

Curtis, J., Langdon, J., Preston, J., Thompson, J., Shenk, J., and Seawell, J., concurred.

A rehearing was denied on March 29, 1934, and the following opinion then rendered thereon:

THE COURT.—The petition of the appellant for a rehearing in this cause is denied.

Due consideration has been given to the renewed contention of the appellant that when, at the time of the arraignment of the defendant, he remained mute, the court below should have directed the clerk to enter a plea of "not guilty by reason of insanity", as well as the plea of "not guilty", which was entered.

An appeal to the Supreme Court of the United States in the above cause was dismissed on June 4, 1934. (*Hall* v. *California*, —— U. S. —— [78 L. Ed. (Adv. Ops.) 1025].)