[Crim. No. 1391. Third Appellate District.—September 28, 1934.]

THE PEOPLE, Respondent, v. WILLIAM C. WOODS, Appellant.

R. C. Colombe for Appellant.

U. S. Webb, Attorney-General, and Ralph H. Cowing, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was convicted of the crime of robbery of the second degree. On appeal it is contended the verdict and judgment are not supported by the evidence, that the court erred in admitting evidence of another offense and in giving to the jury certain instructions. It is also asserted the prosecuting attorney was guilty of prejudicial misconduct in referring to the evidence of another offense in his argument to the jury.

There is ample evidence of the identity and of the guilt of the defendant. The robbery occurred at 3 o'clock on the morning of May 20, 1934. Mr. Burch, the night clerk of the Hotel Maywood at Corning, then had custody of a sum of money in excess of $28.45 which was contained in the cash register in the lobby of the hotel. The clerk was alone in the lobby. The defendant, who had operated a barber shop in the vicinity of the hotel, was known to the clerk. At the time above mentioned the defendant walked into the lobby of the hotel clothed in a light gray suit with his face masked below the eyes. His left hand was covered with a handkerchief which evidently concealed a weapon. Hastily stepping up behind Mr. Burch, he poked the hidden weapon into the clerk's ribs and said: "This is a hold-up. Get over to that cash register. Be quick and be quiet and I won't hurt you, but get a move on you. . . . Don't you ring that bell (or) I will bore a hole through you." The frightened clerk promptly obeyed the command. Opening the cash register, he told the man to help himself. The robber replied, "No, I won't touch anything. You take that money out of there and put it on that piece of paper— wrap it up and give it to me." The clerk did so. He placed the money on the designated paper. He was then asked if he had any more money about the place. The clerk hastily opened a roll-top desk near by, where he had previously placed other money, and added this to the cash register coin. Wrapping the money in the paper as he had been directed to do, he handed the package to the robber, who took it in his right hand and placed it in

his pocket. The defendant then said to the clerk, "Come on, we are going to take a ride." The robber marched Mr. Burch out through the side door, accelerating his speed by means of an occasional punch in the ribs with the concealed weapon. Regarding the nature of the weapon with which the clerk was threatened, he testified: "It felt like it might be the barrel of a gun or a piece of iron, or might have been a stick, but I thought it was a revolver, and I think so yet." In this fashion the defendant and his victim proceeded down a side street and up an alley, where the clerk was left with the admonition to remain quiet for at least five minutes if he wished to escape harm. The robber then disappeared. The clerk immediately ran back to the hotel to telephone to an officer. When he entered the lobby, he turned off the lights. As he did so, he glanced through the window and chanced to see a man crossing the street towards a garage on the opposite side of the street. The corner was illuminated by a street lamp which enabled him to recognize the man as the same person who had robbed him. He promptly telephoned to the city marshal for assistance. He then went to the window and watched the defendant as he conversed with three other men at the garage. These men soon entered an automobile which was parked near by and drove westerly.

Within a few moments after the robbery occurred, Mr. Jobe, the city marshal, in company with his deputy, LeRoy George, arrived at the hotel. They were told of the robbery and the recognition of the defendant at the garage across the street. The officers immediately went to the garage and interviewed James Siler, who was then in charge. Siler told the officers of the visit of the defendant and his companions, and informed them that the men had driven in an automobile to Camp Olive, which is a resort situated about a mile west of Corning. The officers promptly drove to the Camp Olive resort, where they found the defendant counting his coin and placing it on the counter. He had previously asked the proprietor of the resort to exchange currency for the silver which he possessed. While the defendant was counting his money the officers stood behind him with their weapons drawn. After the money was counted and placed on the counter, they arrested the defendant. This arrest was made within half an hour of

the time when the robbery occurred. The officers took possession of the money, which aggregated the sum of $28.45. In the course of his examination of the defendant, Mr. Jobe asked him if he got the money at the Hotel Maywood, to which he replied, "Yes, I know I done wrong." The other officer asked the defendant why he held up the hotel clerk and he replied that it was because he was drunk. The defendant explained these admissions of guilt by testifying that he supposed the officers were merely joking with him when they asked those questions. The explanation is absurd, in view of the fact that the officers had just placed him under arrest for stealing the money, and in making the arrest they had displayed their weapons. The conduct of the officers left no reasonable opportunity for the defendant to assume that his arrest was a joke. Moreover, the defendant was impeached by evidence that he had been previously convicted of another felony.

The defendant was immediately returned by the officers to the hotel where they found the clerk, who positively identified Woods as the man who had robbed him. The defendant was recognized by the light gray suit of clothes which he wore, by his features, his voice, and the color of his eyes and hair. Mr. Burch said in that regard: "I recognized his voice and I recognized his face, what I could see above the mask. Those black eyes above the mask can't fool me. That's the man that held me up. There ain't enough lawyers in this county to shake me."

Upon the foregoing evidence the defendant was tried and convicted of the crime of robbery of the second degree. There can be no reasonable doubt of the identity of the defendant as the man who robbed the clerk, or of his guilt of the crime of which he was convicted.

There was no prejudicial error with relation to the evidence adduced to the effect that a customer at the Camp Olive resort was asked by the defendant to take him to Corning about an hour before the robbery occurred, and that when he went out to his automobile to do so he found the defendant with a handkerchief over his face. An objection to this testimony was sustained. Later in his testimony, the same witness voluntarily stated that "He (the defendant) had a cloth over his face." There was no motion to strike this answer from the record. We are of the opin-

ion the evidence that the defendant had a handkerchief over his face just before he was driven into Corning one hour before the robbery occurred was competent as tending to show preparation for the commission of the crime, rather than participation in another offense. Amos Hazen, the customer of the Camp Olive resort, testified that the defendant came to the camp about 2 o'clock the morning of the robbery, and asked him to drive him into Corning. That was just an hour before the robbery occurred. In reply to the question, "Will you tell us what happened out there?" Mr. Hazen replied, "The defendant asked me to bring him into town and about five minutes later I went out and drove my car up to pick him up and he came up and had a handkerchief over his face." Upon objection this answer was stricken from the record. Later in the examination of the same witness, in describing his appearance, after he had said that the defendant was wearing a light gray suit of clothes when he demanded that he be taken to Corning an hour before the robbery occurred, in reply to the question, "When he came out to get in the car didn't you notice anything else he had on?" the witness replied, "He had a cloth over his face." This answer was followed by the question, "Did he have a hat on?" An objection to this last question was overruled. The preceding answer remained in the record without objection. Moreover, the court of its own motion subsequently charged the jury as follows: "Counsel made an assignment of misconduct [in the course of the opening statement of the prosecuting attorney to the jury] as he called it. I want to instruct the jury that you will remember the testimony given by this witness [Amos Hazen] and *any reference to any other offense,* if any incidentally made by counsel in discussing this matter, *is stricken from the record and you are instructed to disregard it.*"

█ It was not prejudicial misconduct for the district attorney to have referred in his final argument to the jury to the fact that the defendant had a handkerchief over his face when he came out of the Camp Olive resort to be taken to Corning by Mr. Hazen an hour before the robbery occurred. No objection to the statement was made by the defendant's counsel. It may seem improbable that the defendant would have exposed himself with his face masked,

to Hazen, the driver of the automobile, if he was then planning a robbery. The defendant denied at the trial that he was then masked. It may be that he was then trying to adjust the mask preparatory to carrying out the robbery which he planned to accomplish when he arrived at Corning. He may not have realized that Hazen saw him with the handkerchief over his face. At least there is no evidence to indicate that he was then masked to hold up the Camp Olive resort or to commit any other offense. It was competent evidence tending to show preparation for the very robbery for which he was being tried. When he held up the Hotel Maywood an hour later he was in fact masked. The weight of this evidence was a matter for the determination of the jury. Evidently the district attorney considered that evidence competent as tending to show preparation for the robbery. He said in the course of his argument to the jury: "We find the defendant is out at Camp Olive, . . . west of Corning, . . . in the early morning. . . . It appears he wants to come back to Corning, and he speaks to a man he knows, Amos Hazen, about coming back to Corning, and Amos says, 'Yes, I will bring you back to Corning,' and he goes out and drives his car up. The defendant comes out of Camp Olive. He is dressed in a gray suit and he is wearing a handkerchief over his face. Remember, he is wearing a handkerchief over his face. . . . The technicalities of the law prevent me from saying anything more about it, and our story on that point is censored, but I want to say to you that he was wearing a handkerchief over his face, *just the same as he was wearing a handkerchief over his face as he walked through the east door of the Hotel Maywood.*"

The foregoing statement was based upon evidence which remains in the record without objection. It was competent evidence and legitimate argument that this circumstance shows preparation for the commission of the very offense with which the defendant was charged. It was not evidence of another offense. The challenged argument does not constitute prejudicial misconduct.

■ The court did not err in giving instructions to the jury. No particular instruction is pointed out by the appellant as erroneous. It is merely contended the court should have given to the jury further instructions on its own motion

to the effect that the defendant might have been found guilty of the lesser offense of larceny. No such proposed instruction was offered. Clearly the defendant was guilty of robbery of the second degree. There is no evidence in the record which would warrant the court in instructing the jury that the defendant might be found guilty of mere larceny. The jury was very fully and fairly charged with respect to every essential element of the crime of robbery. There was no miscarriage of justice.

The judgment and the order are affirmed.

Pullen, P. J., and Plummer, J., concurred.