[Crim. No. 3638. Second Dist., Div. Two. Dec. 18, 1942.]

THE PEOPLE, Respondent, v. IRA STURMAN, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney General, and Eugene M. Elson, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellant was accused by information of two felonies, to wit, (1) burglary, (2) attempted burglary. It was also alleged that he had been convicted and served a sentence for the crime of robbery. To such information he pleaded not guilty, March 2, 1942. At that time he moved to set aside the information on the ground that appellant had not been legally committed by a magistrate and that such commitment was without probable cause. (§ 995, Penal Code.) The hearing of such motion was continued until the 5th day of March, at which time the motion was denied, and a plea was entered. The trial of the cause was thereupon set for the 4th day of May and upon the latter date it was continued to May 29th.

When the case was called on the 29th of May an amended information was filed which contained only the one count, to wit, burglary, and it alleged a prior conviction of receiving stolen property. According to the clerk's transcript,

appellant pleaded not guilty to the new pleading except that the prior conviction was admitted. Following a trial by jury appellant was convicted of burglary as charged in the amended information and it was found to be burglary of the second degree. From the judgment and from the order denying his motion for a new trial and from the order denying his motion in arrest of judgment he takes this appeal.

The assignments of error are as follows: (1) Denial of the motion under section 995, Penal Code; (2) lack of jurisdiction to proceed on the amended information; (3) the court's refusal to allow defendant time to plead to the amended information; (4) the insufficiency of the evidence; (5) the admission of irrelevant evidence; (6) prejudicial misconduct on the part of the court, preventing a fair trial; (7) error in refusing requested instructions.

On the afternoon of the 14th day of December, 1941, about 5 o'clock, one Albert Simon of Beverly Hills, on returning to his home with his family, observed appellant in the act of departing therefrom through the rear kitchen door. Upon hearing Simon's vehement salutations appellant walked rapidly to the street. On being pursued by Simon, appellant ran. Failing in his pedestrian effort, Simon continued the chase in his own automobile. Accompanied by a police officer his search was continued in the neighborhood until they apprehended appellant. When Officer Hill entered the lavatory at the gas station on Olympic Boulevard and Beverly Drive he saw appellant throw away a flashlight and a piece of celluloid. This celluloid and another found on the wiring under the dashboard of appellant's coupé were identified at the trial. After placing appellant under arrest, the officer found appellant's coupé bearing the latter's name on the registration certificate, parked directly in front of the Simon house. At the police station appellant stated to Officer Henderson and others that he lived with his sister in Glendale; that he had no automobile; and that if the officer knew the license number on appellant's coupé he should investigate the premises where he was picked up. He stated that the keys to his car were under the visor; that he was in the vicinity of Simon's residence, looking for an apartment. Upon inquiry by the officers why he was using the license plates which he had on his car, he replied that the police were looking for him and that he had put the strange plates on in order to mislead the officers. On making a search of

the coupé the additional piece of celluloid was found. On being interrogated as to his purpose in having the piece of celluloid, appellant replied, "Well, I don't care to answer; . . . no I don't care to make any statement in respect to the celluloid." He declined to answer whether he kept a room or an apartment. No permission had been given appellant to enter the home. At the time of Simon's departure both the front and back doors were locked, the latter having affixed thereto a snap lock which required the locking of the door with a push button. The push button must be on in order to open the door, otherwise it is necessary to use a key.

At the trial Officer Henderson testified that he had been connected with the detective bureau six years; that he had investigated cases where celluloid had been found in the possession of the prisoners; and that he had personally made demonstrations where celluloid was used to open spring locks and had seen demonstrations made wherein it was used to open locks that operate on a snap spring. The officer thereupon testified that he had unlocked the front door at the Simon house by use of a piece of the celluloid found on appellant. He then described the manner of opening the front door by use of such instrumentality.

 (1) It was not error to deny appellant's motion to quash the information. The committing magistrate declined to hold that the evidence was sufficient to support the charge of burglary. However, the district attorney was not bound by such opinion. He was authorized by law to charge appellant with either the offense named in the commitment "or any offense, or offenses, shown by the evidence taken before the magistrate to have been committed." (§ 809, Pen. Code.) He was authorized to accuse appellant of offenses indicated by the evidence taken at the examining trial even though some of such offenses were greater than or different from those named in the commitment. (*People* v. *Malowitz,* 133 Cal.App. 250 [24 P.2d 177].) The amended information accused appellant of burglary. That offense embraced the crime of attempted burglary. The original information charged both crimes, separately stated. The clerk's transcript discloses that defendant was arraigned on the amended information, pleaded not guilty but admitted the prior conviction of receiving stolen property as alleged. But the reporter's "transcript on appeal" discloses that after pleading to the original information the cause was continued for

25 days and came on for trial on the 29th day of May 1942. After appellant had announced ready for trial the district attorney requested leave to file an amended information whose purpose was ''to correct the prior conviction.'' Upon being arraigned, out of the hearing of the prospective jurors, defendant asked ''time to plead to the amended information.'' After explaining that the new pleading made no material change in the charge by omitting the second count and by substituting the correct name of the prior conviction for that erroneously inserted in the original pleading, the court denied the motion for further time to plead. The defendant thereupon denied the alleged commission of the crime of receiving stolen property and his conviction thereof on September 7, 1929, and that he served a term of imprisonment therefor. From such colloquy appellant now contends that he never entered a plea to the charge of burglary.

The offense charged in the amended information is the identical crime alleged in count 1 of the original pleading. But it must be remembered that it embraced the lesser crime contained in count 2 of the original information. The substitution of the recital of a former conviction of receiving stolen property for the allegation in the original pleading of a former conviction of robbery was not a substitution of a different offense requiring the accused to enter a new plea on the general issue. (*People* v. *Hall*, 220 Cal. 166 [30 P.2d 23].) It is contended that since the magistrate made a finding that burglary had not been committed such was a judicial determination of that issue and that there was no probable cause to support the information and therefore the action should have been dismissed. Such is not the law as declared by statute. (§ 809, *supra*.)

(2) The novel contention is presented that since the magistrate determined that the evidence did not establish burglary, the district attorney exercised judicial powers in ignoring such finding and in charging what had been judicially determined did not exist. (Citing art. VI and § 1 of art. III of the Constitution.) But the burden of selecting the particular offense to be charged against one committed is not one of the judicial powers referred to in the cited provisions. The judicial power is the power of a court to make and enter a final judgment with respect to the rights of persons or property upon a defined issue presented by adversary parties. The power conferred upon the district

attorney by section 809 allows him in the conduct of administrative affairs to charge the committed person with any offense "shown by the evidence taken before the magistrate to have been committed." Where the evidence indicates that two or more crimes may have been committed by the prisoner and he has been committed for only one of them, surely it is not a "judicial" act for the district attorney to allege in the information all of the crimes shown to have been committed if he has in his possession evidence which in his opinion would warrant conviction. One of the purposes of the examining trial is to determine whether a crime has been committed. An affirmative determination and the consequent commitment impose upon the district attorney the burden of presenting the appropriate pleading in the proper court charging the prisoner with the crime shown by the evidence to have been committed. It having been established that appellant entered the Simon house in the absence of its occupants without permission; that he was at the time in possession of devices commonly used by burglars; that his own home was 15 miles away; and that while his automobile was parked in front of the Simon house in a residential district, he departed from the premises in haste on foot, pursued by Simon and without explanation of his entry or his presence;—with these facts in hand the prosecution would have appeared weak, if not derelict, to hesitate to present an accusation for burglary.

(3) The assignment of prejudicial error on account of the court's refusal of time for appellant to plead to the amended information is based upon an erroneous conception of the law. The reporter's transcript under the date of May 29th, recites that, when the amended pleading was filed, the court said: "Mr. Sturman, the information alleges that on or about the 27th day of September, 1929, in this Superior Court, you were convicted of the crime of receiving stolen property, a felony, and served a term in the state prison therefor. Is that true?" To this question defendant answered: "Yes, sir." The clerk's transcript under date of May 29th contains the following recitals: "An amended information is filed to correct the information. Defendant is arraigned on said amended information, regularly enters his plea of 'Not Guilty as charged in the amended information' and admits prior conviction as alleged therein, to wit: Receiving Stolen Property, convicted in the Superior Court of the State of California, Los Angeles County, upon which

judgment was rendered on or about September 7, 1929, and defendant admits having served a term of imprisonment therefor in the State Prison.''

We have already shown that the substitution of the name of a former crime and conviction in the place of a crime and conviction erroneously alleged in the original pleading does not entitle the accused to enter a new plea (*People* v. *Hall, supra;* Pen. Code, § 1008). With reference to the claim of appellant that he was entitled to plead again because the new pleading omitted the charge of attempted burglary, there was, under the circumstances of this case, no abuse of discretion in denying defendant's motion. This appears from the language of section 1008, *supra,* which treats of arraignments on amended pleadings as distinguished from pleading to the original information as provided by section 990, Penal Code. The offense charged and for which he was on trial was the same as that alleged in the original information. The only new substance was that his former conviction was for receiving stolen property instead of for the crime of robbery. Special provision is made for just such emergency. And when such additional fact is alleged by amendment, ''defendant shall promptly be rearraigned on such information or indictment as amended and be required to plead thereto.'' (§ 969a, Pen. Code.) There is no requirement that under such circumstances a continuance must be granted. No fact is suggested and none is found to indicate an abuse of discretion. Appellant was himself an experienced litigant and at the second arraignment he was flanked by experienced counsel. We have searched fruitlessly for evidence of that disregard of the rights of the accused so persistently complained of by appellant as violative of the 14th Amendment and of section 13 of article I of the California Constitution. There was no want of due process.

(4) Appellant vainly contends that since nothing was taken or disturbed, the evidence is insufficient to show intent and therefore the verdict is without support. It is unnecessary to prove a theft or attempted theft under an accusation of burglary. The statute requires evidence only that the entry be effected with the intent to steal or to commit any felony. (§ 459, Pen. Code.) In view of the circumstances of appellant's entry into the Simon home, what reasonable inference might a jury draw? Certainly appellant did not expect his peers to infer that he had entered Simon's home

to read a psalm or to engage in prayer. He exhibited neither talent nor inclination to break the silence of the Simon kitchen with song. His present claim that he might have gone in quest of a house to rent furnishes no proof of an innocent purpose. Neither does such contention destroy the inference of a felonious intent arising from the established facts. Armed with a burglar's device for effecting an entrance in spite of Yale locks; found alone, attempting to make his exit from the kitchen; giving no response to the calls of his pursuer as he retreated, leaving his own automobile parked in front of Simon's house as he rapidly sought refuge in other parts—what could practical and reasonable minds infer as to the purpose of a person apprehended under such circumstances? Moreover, when confronted with the articles used by burglars which he had left in his car, he declined to make any statement in response to them. His possession of the celluloid and flashlight; his attempt to conceal them when cornered, his false statement concerning his place of residence and his license plates and his refusal to answer accusatory questions,—all these facts justify the deduction by the jury that his entry was burglarious, that his entry was with a thieving intent. An actual taking would have been only additional evidence of his intention.

(5) There was no error in admitting testimony and allowing the experiment as to the uses of celluloid in opening a Yale lock. The officer had already testified that he had opened Simon's front door. The demonstrations before the jury were merely to show that by using celluloid entry could be made; and also to supply optical proof of the efficacy of celluloid in effecting an entry through Simon's front door. Both front and back doors were locked at the time Simon left his house. No evidence was introduced to show that either door was open when appellant arrived. Since the doors were locked at the time of Simon's departure, it was a reasonable presumption that they continued to be locked until somebody opened them.

It is contended that the court committed error in admitting testimony relative to the change of the license plates on appellant's car. But such evidence had a bearing upon appellant's motive. The fact that his coupé bore license plates other than those originally issued for it was some evidence of a guilty intent. Especially is this true in view of appellant's statement that he had made the substitution to thwart

the search of police for him. ▆ Evidence of the behavior of the accused is competent if it tends to prove intent, flight, concealment, preparation, or any other acts inconsistent with innocence. It has been held proper to show that an hour before committing his robbery the defendant approached his own automobile with his face covered. (*People* v. *Woods*, 1 Cal.App.2d 172, 175 [36 P.2d 212].) ▆ Appellant's act of thus concealing his car's identity before entering the Simon house, like his act of fleeing from the scene, is evidence of his consciousness of a guilty intent. The entry of a strange person into the home of one who has never consented to the presence of such stranger there or any act designed to conceal his identity or to make secure his escape from the scene is competent evidence to prove the purpose of the intruder. (*People* v. *Woods*, 1 Cal.App.2d 172, 175 [36 P.2d 212]; *People* v. *Kelly*, 146 Cal. 119, 123 [79 P. 846]; *People* v. *Arnold*, 199 Cal. 471, 492 [250 P. 168].) The fact that other reasons might be assigned for appellant's concealing the identity of the ownership of his car would not deprive the jury of drawing the inference that he had done so as an aid to his scheme to commit a burglary. (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778].)

▆ (6) Appellant assigns as prejudicial three acts of the district attorney, viz., (1) introducing evidence concerning the illegitimate license plates on appellant's automobile; (2) telling the jury in the course of his address: "Unfortunately, I cannot explain to you where those license plates came from"; and (3) stating in the same address: "We cannot prove what was in his mind. We know what was in his mind, or we would not be prosecuting him, but we can't prove it." The first two of these assignments are disposed of by our discussion above on the admissibility of the testimony with respect to the license plates. Since such evidence was properly admitted, no prejudice could follow the prosecutor's comments thereon. We find no parallel between the language used by the district attorney and the evidence elicited in the case of *People* v. *Glass*, 158 Cal. 650 [112 P. 281] on which appellant relies. The transactions covered by the evidence which brought on a reversal of that judgment, "long antedated any of the occurrences properly embraced within the charge of bribery . . . were entirely separate and distinct . . . it had a tendency to inflame the mind of the jurors against the defendant by showing that in the past he had

resorted to the arts of trickery and fraud. . . ." Appellant here was confronted with his own acts immediately before and at the time of his entry into the Simon house: one was his preparations to conceal his identity, the other was his inferred use of a burglar's implement in effecting such an entry.

As to the third assignment, he is without support. Promptly following the declaration of the prosecuting attorney that he knew what was in appellant's mind the court admonished the jury to disregard the statement. The rule is that such action by the court presumably erased the evil effects of counsel's ill-advised utterance, (23 C.J.S. 605; *People* v. *Berryman,* 6 Cal.2d 331, 337 [57 P.2d 136] ; *People* v. *Harris,* 219 Cal. 727 [28 P.2d 906].) Counsel's statement does not come within either of the exceptions which authorize a reversal for improper remarks. (*Berryman, supra.*)

(7) The extended discussion of appellant upon the "misconduct" of the trial judge has failed to provoke a serious consideration. The rulings of the court which are assigned as misconduct have been, in the main, discussed above. Admitting testimony of the arresting officer bearing upon his taking a Christmas card from appellant is not in itself prejudicial misconduct. Having such document marked for identification might very reasonably have anticipated a later offer of competent evidence. Likewise, the sundry criticisms of the court's responses to the divers requests and motions find no justification in the record. The trial court is not required to maintain silence when appealed to, but within reasonable limitations, the judge may state his own reactions to the efforts of the litigant to effect the modification of a ruling, order, or judgment. Even though a ruling of the court be deemed error, it does not necessarily follow that the reasons assigned or the terms used in the conventional language of the judge in making such ruling affords ground for reversal.

(8) A number of instructions were proposed by appellant, the refusal of which he assigns as prejudicial error. The first of these is as follows: (a) "You are instructed that if weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of the people to produce, the evidence offered should be viewed with distrust." (§ 2061, Code Civ. Proc.) The "stronger evidence" alluded to in the quotation

refers to (1) the license plates first found on the Chevrolet, (2) the registration certificate taken from the car. When the automobile was first taken into custody by the officers, the plates bore the number 94Y829. Appellant told the officers (1) that he had driven the coupé to Simon's house; (2) that he had used such plates to avoid detection by the police. Those plates had been issued to one Otto O. Ogilvie for use upon some other motor car. The coupé was brought to the police station promptly after the arrest. It then bore license plates numbered 94Y829. It contained a registration card at the time showing appellant as owner. The car and its white slip were released to appellant by the police. The slip was in appellant's custody and for that reason the photostat of that document was the strongest proof in the possession of the State. It showed the license number to be 9M8318. Before the car was released to appellant he caused his own plates to be affixed. From the recited facts it appears to us that the best evidence rule was complied with and that there was no occasion for the first rejected instruction.

The other refused instructions all bear upon the necessity of the jury's finding the intent, the existence of which is required by the statute. Had the court read all of them, clearly a repetitious argument would have been delivered on behalf of appellant. If the court had read any one of them it would have added nothing of substantial value to two classical instructions given: (1) one on burglary which specified intent of committing theft as one of "the necessary elements of the crime"; (2) the other that "intent can rarely be proven except by proof of surrounding circumstances and that it is for the jury to determine . . . in any particular case what the intent was." We find no error in the refusal of the proposed instructions.

The appeal from the order denying the motion for arrest of judgment is dismissed. (§ 1237, Pen. Code.) The judgment and the order denying the motion for a new trial are affirmed.

Wood, (W. J.), J., and McComb, J., concurred.

A petition for a rehearing was denied December 30, 1942, and appellant's petition for a hearing by the Supreme Court was denied January 15, 1943. Carter, J., and Traynor, J., voted for a hearing.