[Crim. No. 4065. First Dist., Div. One. June 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM L. JORDAN, Defendant and Appellant.

John L. Cordoza, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, John S. McInerny and Derald E. Granberg, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, J.*—The defendant, William L. Jordan, was convicted of burglary of the first degree. He appeals on two grounds, claiming that the evidence was not sufficient to sustain the conviction and that the proof failed to show that the burglary was of the first degree.

Mr. and Mrs. Willie Preston were the victims of the crime. Both of them had to be absent from their home at 140 Kerwin Avenue, Oakland, during the late afternoon and substantial parts of the Sunday night in question. Mr. Preston left their residence at about 2:30 in the afternoon and did not return until 1 o'clock the next morning, after neighbors had notified him that his house had been broken into. Mrs. Preston left

*Assigned by Chairman of Judicial Council.

the Kerwin Avenue address at approximately 4:30 p. m. and did not return until 7 o'clock the next morning.

The discovery of the crime was made by a neighbor, Mrs. Eddis Mae Smith, whose home is at 124 Kerwin Avenue. Soon after midnight, while on her way home, Mrs. Smith was walking along El Verano toward Kerwin when a car driven by the defendant passed, moving slowly. The automobile turned down Kerwin shortly before Mrs. Smith left El Verano and walked toward her own home along the sidewalk near the Preston residence. The car driven by the defendant continued ahead of her, and it later passed her again. Then the automobile stopped and the defendant stepped out, crossed the street and walked toward the Preston residence; apparently seeing Mrs. Smith he diverted his route to a car parked in the driveway at 148 Kerwin; then he stopped, turned, and went back to his own car, got into it and drove away. As Mrs. Smith passed the Preston home she saw a television and a hi-fi set on the porch; the front door was closed, and there were no lights. Immediately before, she had seen a man and woman walking slowly along the sidewalk near the Preston home.

Mrs. Smith passed on to her own house, and after talking briefly with her husband, took a revolver from under the mattress on her bed and again went outside. The defendant's car had returned and was parked across the street from the Preston home. Mrs. Smith walked to the corner of her lot nearest her neighbor's and watched as the defendant got out of his car and crossed the street. At that time a man and woman were standing on the porch of the Preston home. The defendant had left the door of his car open and the lights on.

As the defendant placed his foot on the bottom step leading to the front porch Mrs. Smith shouted "Halt" and fired a shot into the air. The man and woman on the porch immediately ran away along Kerwin Avenue, in the opposite direction from where Mrs. Smith was standing; the defendant ran back to his car, held the door open, and backed up the length of Kerwin. Mrs. Smith positively identified appellant as the operator of the car, but she could not be sure that the man and woman she had seen earlier near the Preston home were the same persons who were later on the porch.

Mrs. Smith hurried to the porch of the Preston home, where she found that a window had been broken; the front door was closed. She stayed on the premises while another neighbor summoned the police.

When the Prestons had left home on the previous afternoon their hi-fi and television sets had been inside the house in their accustomed places. Mr. Preston stated that he also found one of his wife's dresses on the front porch, and Mrs. Preston testified that a cigarette lighter had been stolen from her bedroom, and a jacket which had been in the garage was also apparently missing.

The neighbor, Mrs. Smith, testified that she saw the automobile which had been driven by the defendant on the following evening; she was riding with Mrs. Preston when she recognized the car and pointed it out. The two went back to take down the license number and then summoned the police, but by the time they returned a second time to the place where the automobile had been, it was gone.

Shortly afterwards, on the Tuesday following the burglary, Mrs. Smith was riding with a friend when she again passed the same car parked on the street. They sought out Mrs. Preston, and she called a police inspector. The two women returned to the place where the automobile was parked; after the police arrived the appellant came out of a neighboring house, and Mrs. Smith identified him as the person she had seen at the Preston home at the time of the burglary, largely by his unusual method of walking. The appellant's automobile was also identified positively by Mrs. Smith, principally by a brown spot on the back of the car.

Following his detention, the appellant admitted to the police that he owned the car. Examination of the automobile showed that a key had been broken off in the ignition and that the ignition wires were down. The appellant made a short statement at the city jail and answered a number of questions asked by the police. He claimed that he had gone to church on the Sunday morning of the burglary and returned home at 2 p. m., took a nap, arose at 5 or 6 p. m., went to a liquor store and stayed there until 8:30 p. m. without buying anything. He further stated that he had left his car in a parking lot and had ridden home with a man named Joe. He had no idea where to reach Joe. He said that he had a few drinks with his sisters, went to bed and did not get up again until 7 o'clock on the following morning, when he went to work. He stated he had broken the key off in the ignition on Sunday at about 7 p. m. in the liquor store parking lot and that he loaned the car to some men whose names he had forgotten. They returned the car Monday morning. Later, he said he did

not know who borrowed the car and that it was returned on Tuesday. Finally, he admitted that his previous accounts were false, but he refused to tell where the car had been on Sunday.

The appellant did not take the stand at the trial. After the submission of the case, the court, sitting without a jury, found him guilty of burglary of the first degree. Appellant's motion for a new trial was denied, and he was sentenced to state's prison. Appellant appeals from the judgment and from the denial of his motion for a new trial.

 The conviction depends exclusively on circumstantial evidence. As burglary is a crime of stealth, dependence must be placed in most cases upon circumstantial evidence. In *People* v. *Colletta*, 100 Cal.App.2d 1, 5 [222 P.2d 922], it is said: "In a prosecution for burglary the evidence on which a defendant is convicted may be purely circumstantial and if substantial, as in the present case, is sufficient to support the judgment of guilty."

In Fricke, California Criminal Law (8th ed. 1961) page 310, the author comments: "Burglary being one of those crimes which are usually committed in secret, the proof of the corpus delicti generally must rest on circumstantial evidence alone." This is just such a case.

 The corpus delicti was proven here by proper inferences based on uncontradicted evidence. The owners of the home left in the late afternoon without having authorized any person to remove any of their property. The doors were locked. Upon their return they found that a window had been broken and that someone had entered the house with the obvious intention of stealing, for the removal of the television and hi-fi sets to the front porch, the abstraction of the cigarette lighter, the moving of the dress of Mrs. Preston to the front porch, all indicated that the unauthorized person who had entered the dwelling did so with the intent to steal.

 Corpus delicti in a burglary case may be established by proof that property was stolen from a locked dwelling house in the absence of the owner. (*People* v. *Willison*, 116 Cal. App. 157, 159 [2 P.2d 543]; *People* v. *Russell*, 120 Cal.App. 622, 623 [8 P.2d 209].) Burglarious intent can reasonably be inferred from an unlawful entry alone. (*People* v. *Stewart*, 113 Cal.App.2d 687, 691 [248 P.2d 768].) Even if no crime be committed after the entry, circumstances such as flight after being hailed by an occupant of the building (*People* v. *Noon*, 1 Cal.App. 44 [81 P. 746]), the fact that the building was entered through a window (*People* v. *Soto*,

53 Cal. 415) or through a doorway which previously had been locked (*People* v. *Sturman,* 56 Cal.App.2d 173 [132 P.2d 504] ; *People* v. *Dreyer,* 71 Cal.App.2d 181 [162 P.2d 468]) without reasonable explanation of the entry, will warrant the conclusion by a jury that the entry was made with the intention to commit theft.

■ Having established the fact that a burglary had been committed, it was next the duty of the prosecution to show that the defendant was connected with the crime as a participant. It was not, of course, necessary to prove that the appellant actually entered the dwelling house, because one who aids and abets another to commit a burglary is equally guilty as a principal. (Pen. Code, §§ 31, 971; *People* v. *Bonilla,* 124 Cal.App. 212, 214 [12 P.2d 64] ; *People* v. *Mc-Clure,* 133 Cal.App.2d 631, 633 [284 P.2d 887].)

■ The following elements of proof could properly be considered by the trier of fact in establishing the guilt of the defendant as one who aided and abetted the person or persons actually entering the house :

(1) Appellant drove about the area in question in a stealthy and suspicious manner in the middle of the night, and he twice approached the Preston home. The first time he was frightened away by the presence of Mrs. Smith, the neighbor; the second time he actually set foot on the Preston porch step and was about to ascend the stairs to join the man and woman who stood on the porch with the stolen property. In *People* v. *Hicks,* 175 Cal.App.2d 556, 557-558 [346 P.2d 452], the court sustained a conviction based in large part upon similar evidence, saying : ''The fact that he was driving Booker's car slowly back and forth at a late hour in front of the closed market, with dimmed lights, warrants the inference that he knew of Booker's actions and was present to afford Booker quick escape with his loot.''

(2) The defendant fled the scene upon the shouted warning and the shot fired by Mrs. Smith. Evidence of the flight of a person accused after the commission of the crime is admissible as indicating a consciousness of guilt. (*People* v. *Santora,* 51 Cal.App.2d 707, 710 [125 P.2d 606] ; *People* v. *Gryskiewicz,* 88 Cal.App.2d 230, 235 [198 P.2d 585] ; *People* v. *Cook,* 10 Cal.App.2d 54, 58 [51 P.2d 169] ; *People* v. *Hall,* 220 Cal. 166, 173 [30 P.2d 23, 996].)

(3) Late at night in a lonely residential district appellant approached the two persons standing near the stolen property on the front porch of the house; all three fled at the sound

of the revolver shot and Mrs. Smith's shout. These facts indicate the close cooperation and the consciousness of guilt of the three people evidently involved in the burglary.

(4) The defendant told conflicting and untruthful stories to the police after his arrest. And his account of sleeping peacefully at home on the night of the crime did not check with the testimony of Mrs. Smith, who identified him as being present at the scene of the burglary. The defendant's statements to the police were self-contradictory; among other things he both denied and admitted knowing who had allegedly borrowed his car, and he stated that he did not know how to contact the person or persons who presumably would serve as his alibi and did not know their names, although he says that he entrusted them with his automobile. His falsehoods with respect to his whereabouts at the time of the crime and his resort to inconsistent and conflicting versions of the facts are admissible against him as indicating a consciousness of guilt. (*People* v. *Roy,* 175 Cal.App.2d 551, 555 [346 P.2d 415] ; *People* v. *Gibson,* 64 Cal.App.2d 537, 539 [149 P.2d 25] ; *People* v. *Proctor,* 169 Cal.App.2d 269, 279 [337 P.2d 93].)

(5) Appellant did not take the stand in his own defense. And this fact could properly be weighed by the trier of fact. His failure to become a witness may indicate the truth of evidence against him and support inferences which are unfavorable to him. (*People* v. *Gillette,* 171 Cal.App.2d 497, 502 [341 P.2d 398]; *People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3].)

Thus, there was ample evidence to convict the defendant of participation in the burglary. ▉ As is said in *People* v. *Anderson,* 37 Cal.App.2d 615, 619 [100 P.2d 348] : "Guilty participation may be shown by circumstantial evidence as well as by direct evidence. If the circumstances proved reasonably justify the conclusion of the jury, the reviewing court has no authority to interfere therewith. The principles applicable in such a case were recently stated by this court as follows in *People* v. *Schneider,* 36 Cal.App.2d 292 [98 P.2d 215] : '. . . appellant's main attack upon the sufficiency of the evidence is based upon the fact that there is an absence of direct evidence as to the actual delivery of the check to Weyel. It is well settled, however, that a fact relating to the guilt of an accused may be established by circumstantial as well as by direct evidence; that the right to draw proper inferences from the evidence is a function of the jury and that as long as its conclusions do not do violence to reason, a reviewing court is not permitted to substitute its finding of the ultimate

fact for that reached by the constitutional as well as the statutory arbiter thereof. (*People* v. *Latona,* 2 Cal.2d 714 [43 P.2d 260] ; *People* v. *Martinez,* 20 Cal.App. 343 [128 P. 952].) In other words, as frequently said by the courts, circumstantial evidence may be as conclusive in its convincing force as the testimony of witnesses to the overt act (*People* v. *Nagy,* 199 Cal. 235 [248 P. 906] ; *People* v. *Perkins,* 8 Cal.2d 502 [66 P.2d 631]), and consequently where the circumstances proved reasonably justify the conclusion of the jury expressed in its verdict, it is beyond the authority of the reviewing court to interfere therewith. (*People* v. *Latona, supra.*) Furthermore, in considering the question of the sufficiency of the evidence, the reviewing court must assume in favor of the verdict the existence of every fact which the jury could have reasonably drawn therefrom. (*People* v. *Perkins, supra.*)' "

■ Appellant relies principally upon such cases as *People* v. *Draper,* 69 Cal.App.2d 781 [160 P.2d 80]; *People* v. *Graziano,* 83 Cal.App.2d 701 [189 P.2d 518], and *People* v. *Wilkins,* 141 Cal.App.2d 557 [297 P.2d 42], which correctly hold that no one can be convicted on mere suspicion. In each of the three cases the court analyzed the evidence presented and determined that there was not sufficient proof to justify the conviction. It is elementary that each case must rest upon its own facts. The present case differs from each of the three referred to in that the evidence adduced in support of the instant conviction is more complete and convincing than that in any of the three citations relied upon by the appellant. It is our conclusion that the trier of fact was amply justified in finding the defendant guilty.

Turning to the contention of the appellant that there is not sufficient evidence to justify the finding that the burglary of the dwelling was committed in the nighttime and was therefore of the first degree, respondent again necessarily relies completely on circumstantial evidence. The indirect evidence here involved consists of inferences. "An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect." (Code Civ. Proc., § 1958.) And, "An inference must be founded: 1. On a fact legally proved; and, 2. On such a deduction from that fact as is warranted by a consideration of the usual propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature." (Code Civ. Proc., § 1960.) In analyzing the evidence we must keep in mind the necessity of

considering the usual propensities of men. ■ This is another way of saying that the trier of fact may use common sense and his general experience in observing the conduct of human beings in reaching a conclusion from the facts proved. The evidence in the case shows that sundown in Oakland on the date of the burglary occurred at 8:28 p. m. ■ The time between the departure of Mrs. Preston from her home and the discovery of the burglary was roughly eight hours, four of which were before and four after sunset. Is it likely that anyone would choose the daytime rather than night to break a front window and move out on the porch such bulky and easily observable objects as the television and hi-fi sets? Or is it in accordance with the usual propensities of men that after moving the stolen articles to the front porch the guilty participants would leave the house and not return for a period of four or more hours? On the contrary, we think that the usual propensities of men would lead the burglars to commit their crime under cover of darkness and to attempt to remove the stolen property soon after the commission of the forcible entry. (*People* v. *Schafer*, 161 Cal. 573, 579-580 [119 P. 920] ; *People* v. *Helsley*, 41 Cal.App.2d 935, 938 [108 P.2d 97] ; *People* v. *Ross*, 61 Cal.App. 61 [214 P. 267] ; *People* v. *Williams*. 57 Cal.App. 267 [207 P. 255].) We conclude that the court was justified in finding that the burglary did take place in the nighttime and that it therefore was burglary of the first degree.

The judgment of conviction and the denial of the motion for a new trial are affirmed.

Bray, P. J., and Sullivan, J., concurred.