Filed 1/22/16  P. v. Sheehan CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066770 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS269583) |
| SCOTT SHEEHAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Dwayne

K. Moring, Judge.  Affirmed in part; reversed in part and remanded.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and

Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney

General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Daniel

Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Scott Sheehan appeals a judgment following his jury conviction of first degree

burglary.  On appeal, he contends the trial court erred by: (1) not instructing sua sponte

on trespass as a lesser included offense (LIO) of burglary; (2) instructing with CALCRIM No. 315; and (3) not striking a prison prior allegation. We reverse the court's imposition of a one-year enhancement for a prison prior allegation and affirm the judgment in all other respects.

FACTUAL AND PROCEDURAL BACKGROUND

At about 7:30 p.m. on January 7, 2014, James Geering received a call from his alarm company informing him there had been an intrusion at his Chula Vista home. One pane of the tempered glass of his front door had been shattered. George Smith, Geering's neighbor, was in his backyard when he heard an alarm sound. Smith saw Sheehan leaving Geering's home through its front door. Sheehan walked about 100 feet to a purple van and drove away. The van was an older model and had a tire on the left side of its back door and a ladder going up the right side of the back door. Smith called 911 and, when police arrived a few minutes later, gave them a description of the van and the person he saw leaving Geering's home.

At about 9:00 p.m. that evening, Chula Vista Police Officer Christopher Fisher saw a van matching the description Smith had given him. He detained its driver, Sheehan, who had a flashlight in his pocket. Sheehan's jacket had small shards of glass on it. A hammer and bag of tools were next to the driver's seat. Smith was taken to the site of the detention and positively identified both Sheehan and the van.

2

An amended information charged Sheehan with one count of first degree burglary (Pen. Code, §§ 459, 460)[1] and also alleged he had served three prior prison terms (§§ 667.5, subd. (b), 668), had three prior serious felony convictions (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)), and had three prior strike convictions (§§ 667, subd. (b)-(i), 1170.12, 668). At trial, Geering, Smith, and Fisher testified substantially as described above. Geering testified he had never given Sheehan permission to enter his home. He also testified he was a firefighter and knew how difficult it is to break tempered glass. Metal impact or other tools (e.g., a hammer) are usually needed to break it.

In his defense, Sheehan presented the testimony of Sonia Vega, his former girlfriend, who stated that before the incident she had shattered one of the windows of Sheehan's van and caused glass to be everywhere inside the van. Marina Ogdo, a defense investigator, testified Smith was about 70 feet from Geering's home when he first saw Sheehan. She also testified the rear driver's side window of Sheehan's van was broken. Scott Fraser, a psychologist, testified about the reliability of eyewitness identifications and that a witness's certainty regarding his or her identification does not correlate highly with the accuracy of that identification. He testified that at a distance of 70 feet there is poor reliability of accurate recognition of a person, especially when it is dark.

The jury found Sheehan guilty of first degree burglary. In a bifurcated trial, the court found true the allegations Sheehan had three prior serious felony convictions. It dismissed the allegations of his first and second prison priors and found true the third

---

[1] All statutory references are to the Penal Code.

prison prior allegation.  The court found he had three prior strike convictions, but granted

Sheehan's *Romero*[2] motion and struck two of them.  The court sentenced Sheehan to a

total term of 20 years in prison, consisting of two years for his burglary conviction,

doubled to four years under the three strikes law, plus three consecutive five-year terms

for his three prior serious felony convictions and a consecutive one-year term for his

prison prior.  Sheehan timely filed a notice of appeal.

DISCUSSION

I

*Instruction on Trespass as an LIO of Burglary*

Sheehan contends the trial court erred by not instructing sua sponte on trespass as

an LIO of burglary.  Alternatively, he contends he was denied effective assistance of

counsel when his defense counsel did not request an instruction on trespass.

A

"A trial court has a sua sponte obligation to instruct the jury on any uncharged

offense that is lesser than, and included in, a greater charged offense, but only if there is

substantial evidence supporting a jury determination that the defendant was in fact guilty

only of the lesser offense.  [Citations.]  An uncharged offense is included in a greater

charged offense if *either* (1) the greater offense, as defined by statute, cannot be

committed without also committing the lesser (the elements test), *or* (2) the language of

---

2      *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

the accusatory pleading encompasses all the elements of the lesser offense (the accusatory pleading test)." (*People v. Parson* (2008) 44 Cal.4th 332, 348-349 (*Parson*).)

"Under the accusatory pleading test, a court reviews the accusatory pleading to determine whether the facts actually alleged include all of the elements of the uncharged lesser offense; if it does, then the latter is necessarily included in the former." (*Parson*, *supra*, 44 Cal.4th at p. 349.) We review de novo, or independently, a trial court's failure to give an instruction on a lesser included offense. (*People v. Verdugo* (2010) 50 Cal.4th 263, 293.)

B

The amended information charged Sheehan with the offense of first degree burglary, alleging:

> "On or about January 7, 2014, [Sheehan] did unlawfully enter a building with the intent to commit theft, in violation of [section] 459. [¶] And it is further alleged that said burglary was a burglary of an inhabited dwelling house, within the meaning of [section] 460."

The trial court did not instruct, nor did Sheehan's defense counsel request an instruction, on trespass as an LIO of burglary.

To prove the offense of burglary, the prosecution generally must prove the defendant: (1) entered a building; and (2) when entering the building, he or she intended to commit theft or any felony. (CALCRIM Nos. 1800, 1801.) To prove the offense of criminal trespass, the prosecution must prove the defendant: (1) willfully entered a dwelling house belonging to someone else; (2) entered or remained without the consent of the owner; and (3) was not a public officer. (CALCRIM No. 2932.)

5

C

Sheehan concedes the California Supreme Court has held trespass is not an LIO of burglary under the elements test. (*People v. Lohbauer* (1981) 29 Cal.3d 364, 368-369 (*Lohbauer*) [trespass is not an LIO of burglary because burglary may be committed by one who has permission to enter a dwelling]; *People v. Foster* (2010) 50 Cal.4th 1301, 1343-1344 [trespass is a lesser related offense, not an LIO, of burglary].) Nevertheless, he asserts the California Supreme Court has not decided the question of whether trespass may be an LIO of burglary under the accusatory pleadings test. He argues that, based on the allegations of the amended information in this case, trespass is an LIO of the charged burglary.

However, *Lohbauer* concluded trespass is "not encompassed within the language of the information which charged defendant with having 'entered the house of [victim] . . . with intent to commit theft [i.e., burglary].' " (*People v. Lohbauer*, *supra*, 29 Cal.3d at p. 369.) Likewise, *People v. Birks* (1998) 19 Cal.4th 108 stated: "[T]he allegations [of burglary] set forth in Count 1 of the instant information [did not] necessarily include criminal trespass. Count 1 simply alleged that defendant 'did willfully and unlawfully enter a commercial building . . . with intent to commit larceny and any felony.' " (*Id.* at p. 118, fn. 8.) Based on the similarity of the allegations in the instant amended information to the allegations of the accusatory pleadings in *Lohbauer* and *Birks*, we conclude the burglary alleged in the amended information did not necessarily include the offense of trespass. It simply alleged Sheehan "did unlawfully enter a building with the intent to commit theft." As the People assert, the unlawful entry of a building, as alleged

6

in this case, is not the same as entry without consent for the offense of trespass. If a defendant enters with the intent to commit theft, it is that intent that makes the entry unlawful and, unlike trespass, he or she is guilty of burglary even if the defendant was invited onto the premises.[3] We conclude trespass is not an LIO of burglary under the accusatory pleadings test based on the allegations of the amended information in this case. Therefore, the trial court did not have a sua sponte duty to instruct on trespass as an LIO of burglary.

The cases cited by Sheehan are either inapposite and/or did not decide this issue and therefore do not persuade us to reach a contrary conclusion. (See, e.g., *People v. Sakarias* (2000) 22 Cal.4th 596, 622, fn. 4 [court concluded there was no substantial evidence to support instruction on trespass (i.e., defendant entered without the intent to steal)]; *People v. Waidla* (2000) 22 Cal.4th 690, 733, 735 [court assumed trespass was an LIO of burglary for purposes of discussion only; in any event, court concluded there was no substantial evidence that would absolve defendant of burglary and not trespass].) Furthermore, to the extent Sheehan correctly argues *Birks's* language is dicta, we nevertheless find its reasoning persuasive and conclude it supports our conclusion.

---

3    Contrary to Sheehan's assertion, assuming he entered the building without the consent of the owner, it is not the absence of that consent, but rather his entry with intent to commit theft, that made his entry "unlawful" within the meaning of the accusatory pleading in this case.

## D

Assuming arguendo trespass was an LIO of burglary under the accusatory pleadings test, we nevertheless conclude the trial court did not have a sua sponte duty to instruct on trespass because there was no substantial evidence to support that instruction based on the record in this case. A trial court has a sua sponte duty to instruct on an LIO "only if there is substantial evidence supporting a jury determination that the defendant was in fact guilty only of the lesser offense." (*Parsons*, *supra*, 44 Cal.4th at pp. 348-349.) As the People assert, even assuming there was substantial evidence to support a finding Sheehan did not have the requisite intent for burglary, there was insufficient evidence to support a finding by the jury that he, in fact, entered Geering's home but did so without that intent. Sheehan's defense at trial was that he was misidentified as the person who entered Geering's home and that he never entered the home. Therefore, based on the evidence at trial and Sheehan's defense theory, he was guilty of either burglary or no offense whatsoever (e.g., not guilty of trespass). There is insufficient evidence to support a finding he entered the home without the intent to commit theft or any felony. The court properly did not instruct on trespass as an LIO of burglary on the alternative ground that there was insufficient evidence to support a finding that he was, in fact, guilty of only trespass. (*Ibid*.)

## E

Assuming arguendo there was substantial evidence to support a finding Sheehan committed only trespass and not burglary and trial court had a sua sponte duty to instruct on trespass as an LIO of burglary, we nevertheless conclude that presumed error was

8

harmless. Based on our review of the record, we conclude it is not reasonably probable Sheehan would have obtained a more favorable verdict had the court instructed on trespass as an LIO of burglary. (*People v. Breverman* (1998) 19 Cal.4th 142, 165; *People v. Watson* (1956) 46 Cal.2d 818, 836.) The jury presumably found credible Smith's eyewitness identification of Sheehan as the person who entered Geering's home. Sheehan was stopped soon after the incident driving a purple van that matched the description Smith gave to police. Sheehan had a flashlight, a common burglary tool, on him and other tools were in his van. His jacket had shards of glass on it, which the jury could reasonably infer came from his breaking the glass pane of Geering's front door. Therefore, there is strong evidence to support inferences that Sheehan broke the glass of Geering's front door and entered his home with the intent to commit theft, but then left the home after the alarm sounded and fled in his purple van. (*People v. Jordan* (1962) 204 Cal.App.2d 782, 786 [burglarious intent can reasonably be inferred from unlawful entry alone].) The jury not only rejected Sheehan's defense that he was not the person who entered Geering's home, but very likely would have rejected any theory that he did, in fact, enter that home but did so without an intent to commit theft or any felony (i.e., was guilty of trespass). Had the trial court instructed the jury on trespass as an LIO of burglary, it is not reasonably probable Sheehan would have obtained a more favorable result (e.g., conviction of only trespass).

F

Sheehan also argues he was denied effective assistance of counsel when his counsel did not request an instruction on trespass. To prove ineffective assistance of

9

counsel, he must show, by a preponderance of the evidence, that (1) his counsel's representation was deficient (i.e., was below prevailing professional standards of reasonableness), and (2) he was prejudiced by that deficient performance (i.e., it is reasonably probable that, but for his counsel's deficient performance, he would have obtained a more favorable result).  (*Strickland v. Washington* (1984) 466 U.S. 668, 687, 691-692; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218; *People v. Pope* (1979) 23 Cal.3d 412, 425.)

Based on our review of the record, we conclude Sheehan has not shown either that his counsel performed deficiently by not requesting an instruction on trespass *or* that he was prejudiced by that purported deficient performance.  Because we concluded above that trespass was not an LIO of burglary under either the elements test or the accusatory pleading test, his counsel did not perform deficiently by not requesting an instruction on trespass.  Likewise, because we concluded above there was insufficient evidence to support an instruction on trespass and, in any event, any failure to instruct on trespass was harmless error, Sheehan cannot show he was prejudiced by his counsel's purported deficient performance by failing to request that instruction.  (*Strickland v. Washington*, *supra*, 466 U.S. at pp. 687, 691-692; *People v. Ledesma*, *supra*, 43 Cal.3d at pp. 217-218; *People v. Pope*, *supra*, 23 Cal.3d at p. 425.)  Sheehan was not denied his right to effective assistance of counsel.

10

## II

### *CALCRIM No. 315*

Sheehan contends the trial court erred by instructing the jury with a version of CALCRIM No. 315 that included the certainty of the witness's identification as a factor in evaluating the accuracy of the identification.

### A

The prosecution requested an instruction with CALCRIM No. 315 on the jury's evaluation of eyewitness identification evidence. Sheehan objected to the part of the proposed instruction that stated: "How certain was the witness when he or she made an identification?" The trial court overruled Sheehan's objection and instructed the jury with a version of CALCRIM No. 315 that stated in pertinent part:

> "You have heard eyewitness testimony identifying the defendant. As with any other witness, you must decide whether an eyewitness gave truthful and accurate testimony. In evaluating identification testimony, consider the following questions: [¶] . . . [¶]
>
> "*How certain was the witness when he or she made an identification*?" (Italics added.)

That "certainty factor" was one of 14 factors listed for the jury to consider in evaluating an eyewitness's identification testimony.

### B

We conclude the trial court properly instructed that a witness's certainty of his or her identification may be considered by the jury in evaluating that witness's identification testimony. CALJIC No. 2.92, a predecessor to CALCRIM No. 315, was upheld in *People v. Johnson* (1992) 3 Cal.4th 1183, 1230-1232. (See *People v. Wright* (1988) 45

11

Cal.3d 1126, 1141-1143 [approving CALJIC No. 2.92, which included the certainty factor at that time].)  When *Johnson* was issued, CALJIC No. 2.92 included among the factors the jury should consider in evaluating eyewitness identification testimony " '[t]he extent to which the witness was either certain or uncertain of the identification.' " (*Johnson,* at pp. 1230-1231, fn. 12.)  *Johnson* rejected the defendant's contention that the trial court erred in instructing the jury that the extent to which the witness was either certain or uncertain of the identification was a factor to consider in assessing eyewitness identification testimony.  (*Id.* at pp. 1231-1232.)

Although Sheehan correctly notes the California Supreme Court has not, whether in *Johnson* or otherwise, expressly addressed the question of whether inclusion of the certainty factor violates the federal and/or California Constitutions, we nevertheless presume the Supreme Court would not have approved that instruction were it constitutionally infirm.  Furthermore, other cases issued after *Johnson* have rejected the argument Sheehan makes in this appeal.  (*People v. Sullivan* (2007) 151 Cal.App.4th 524, 561-562; *People v. Gaglione* (1994) 26 Cal.App.4th 1291, 1302-1303.)  *Sullivan* stated: "As in *Gaglione*, we therefore 'reject defendant's arguments and find no error in CALJIC No. 2.92' as given with reference to degree of certainty as a factor in assessing the reliability of eyewitness identification testimony." (*Sullivan*, at p. 562.)  We believe those cases' conclusions regarding the witness certainty factor in CALJIC No. 2.92 should likewise be applied to the trial court's instruction with CALCRIM No. 315 in this case.  CALCRIM No. 315 does not require a jury to consider a witness's certainty or uncertainty.  Contrary to Sheehan's assertion, it does not make any correlation between

12

the witness's level of certainty and accuracy of his or her identification. It does not imply witnesses are more believable if they are certain of their identifications. Rather, CALCRIM No. 315 properly permits a jury to consider an eyewitness's certainty at the time of his or her identification. We conclude the trial court did not err by instructing that a witness's certainty of his or her identification may be considered by the jury in evaluating that witness's identification testimony.

Sheehan has not cited any California case that held erroneous, whether as a violation of the federal and/or California Constitutions or otherwise, an instruction that witness certainty is a factor in the jury's evaluation of identification testimony. His citations to cases from other jurisdictions and psychology journal articles do not persuade us to reach a contrary conclusion. (See, e.g., *State v. Lawson* (Or. 2012) 291 P.3d 673; *State v. Long* (Utah 1986) 721 P.2d 483; *Brodes v. State* (Ga. 2005) 614 S.E.2d 766.)

III

*Failure to Strike Sheehan's Third Prison Prior*

Sheehan contends, and the People agree, the trial court erred by not striking the third prison prior allegation and instead imposing a consecutive one-year enhancement under section 667.5, subdivision (b). He correctly argues the court should have stricken that allegation pursuant to *People v. Jones* (1993) 5 Cal.4th 1142 because the same prior conviction (on Jul. 29, 1996, in S.D. County Super. Ct. No. SCD119303) was used by the court to impose a consecutive five-year enhancement under section 667, subdivision (a)(1). In *Jones*, the California Supreme Court held: "[W]hen multiple statutory enhancement provisions are available for the same prior offense, one of which is a

13

section 667 enhancement, the greatest enhancement, but only that one, will apply."
(*Jones*, at p. 1150.)  Therefore, the trial court should have stricken the lesser enhancement for that prior offense (i.e., the § 667.5, subd. (b), one-year enhancement).  By not doing so, the court erred.[4]

## DISPOSITION

The trial court's imposition of a consecutive one-year enhancement under section 667.5, subdivision (b), is reversed.  In all other respects, the judgment is affirmed.  The matter is remanded to the trial court for resentencing consistent with this opinion.


                                                                    McDONALD, J.

I CONCUR:

HUFFMAN, Acting P. J.

---

[4]     Because we dispose of this contention based on *Jones*, we need not address Sheehan's alternative arguments for striking the section 667.5, subdivision (b), enhancement.

AARON, J.

While I concur in the result, I disagree with the majority's conclusion that CALCRIM No. 315 "does not imply witnesses are more believable if they are certain of their identifications." (Maj. opn. *ante*, at p. 13) On the contrary, this is precisely what the instruction implies when it tells jurors that, in evaluating eyewitness testimony, they may consider, among other questions, "How certain was the witness when he or she made an identification?"

The majority observes that the California Supreme Court approved the predecessor to CALCRIM No. 315—CALJIC No. 2.92—in *People v. Wright* (1988) 45 Cal.3d 1126, 1141-1143 (*Wright*). However, in *Wright*, the court's focus was the propriety of giving such an instruction when *requested by the defendant*, and where that instruction " ' "directs attention to evidence from . . . which a reasonable doubt of guilt could be engendered." ' " (*Id.* at p. 1140.) In this vein, the *Wright* court noted that there exists " 'an unbroken string of authorities [that] requires the giving of factually appropriate pinpoint jury instructions correlating the issues of identity and reasonable doubt.' " (*Ibid.*) Thus, the *Wright* court was addressing a situation that is clearly distinguishable from that in the present case. Unlike in this case, the *Wright* court had no occasion to consider a defendant's claim that a jury instruction was improper because it implied that a witness's certainty increased the witness's believability.

Significantly, in *Wright*, the court cautioned that an instruction concerning eyewitness identification factors should list, in a neutral manner, the relevant factors

supported by the evidence and "should *not* take a position as to the *impact* of each of the psychological factors listed." (*Wright*, *supra*, 45 Cal.3d at p. 1141.) The court further cautioned that such an instruction should not "improperly invad[e] the domain of either jury or expert witness." (*Id.* at p. 1043.)

Putting aside the obvious distinction between concluding that it is error to refuse to give a jury instruction requested by the defendant that deals with identification in the context of reasonable doubt, and concluding that it is not error to give an instruction on eyewitness identification to which the defendant raised an objection, CALCRIM No. 315, as currently worded, fails to meet the standards set forth in *Wright* in that it *does* take a position as to the impact of the certainty of the eyewitness by implying that the more certain the eyewitness is of his identification, the more reliable the witness's identification. The failure of the instruction to meet the *Wright* standards is particularly glaring when, as here, the instruction is given in a case in which the defendant has presented expert testimony to the effect that an eyewitness's level of certainty is unrelated to the reliability of the witness's identification.

The instruction may also "invad[e] the domain of . . . [an] expert witness," (*Wright*, *supra*, 45 Cal.3d at p. 1143) as this case exquisitely demonstrates. The sole eyewitness "positively" identified the defendant in a curbside encounter after the burglary. Appellant's expert on eyewitness identification testified, generally, that an eyewitness's perceived sense of certainty about his or her identification is not a good indicator of the accuracy of the identification. The prosecutor did not have to present its

2

own expert to counter appellant's expert's testimony. Instead, he was able to—and did—merely cite to CALCRIM No. 315, and in the process, exacerbated the problem by telling the jurors not that they *may* consider the eyewitness's certainty, which CALCRIM No. 315 states, but rather, that they *must* consider it:

> "What else is [appellant's expert] wrong about? He says don't ever confuse certainty with accuracy. You should actually throw that out the window. Don't overlook certainty. It's unreliable. Science says so. He is wrong. He is wrong about that. [¶] *It's right there in the jury instruction. Jury instruction 315,* the judge read it to you yesterday. You are to consider certainty. It's absolutely, according to the law, one of the factors you *must* consider." (Italics added.)

Thus, in order to counter the defendant's expert's testimony that the degree of certainty of an eyewitness is not correlated with the reliability of the witness's identification, the prosecutor had only to point to CALCRIM No. 315, which, in effect, told the jury that the defendant's expert was wrong.

Research concerning the effect of certainty on the reliability of eyewitness identifications, is decidedly mixed. The giving of CALCRIM No. 315 in this case was problematic in that it, in effect, took sides in the debate, instructing jurors that, in fact, the more certain an eyewitness is of his identification, the more reliable his identification is, thereby entirely undermining the defendant's expert witness's testimony.

While I do not believe that giving this instruction caused prejudicial error in this case in view of the strength of the evidence implicating appellant, it clearly could do so in other cases. Accordingly, I concur only in the result. In addition, I would respectfully suggest that this case affords the Supreme Court the opportunity to consider whether the

3

giving of CALCRIM No. 315 under these circumstances comports with the principles underlying the holding in *Wright*.

AARON, J.