Filed 7/28/16  P. v. Rogers CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H041299 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. Nos. C1120710, C1117182) |
| v. | |
| DANIEL ROGERS, | |
| Defendant and Appellant. | |

In a bench trial, the trial court found defendant Daniel Rogers guilty on two counts of first degree burglary and one count of receiving stolen property.[1]  Rogers also pleaded no contest to possession of a controlled substance.  He admitted two prior "strike" convictions, two serious felony convictions, and a prior prison term.  The court imposed a total term of 22 years in state prison.

Rogers contends the evidence was insufficient to support the burglary convictions. He further contends the trial court erred by imposing penalty assessments of 300 percent on several fines and fees.

We conclude substantial evidence supported the convictions on both burglary counts.  We further conclude the trial court properly imposed penalty assessments of 300 percent on the applicable fines and fees.  Finding no error, we will affirm the judgment.

---

[1] Defendant is also known as Joshua Emil Rogers.

# I.  FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of the Offenses*

The prosecution charged Rogers in connection with two burglaries:  The burglary of Holly Cadiente's house in August 2011, and the burglary of Enrique Aldama's apartment in October 2011.  In the burglary of Cadiente's house, a laptop was stolen from her bedroom during the day while Cadiente was away from home.  In the burglary of Aldama's apartment, Rogers entered the apartment uninvited and unannounced around 4 a.m.  Aldama saw Rogers and confronted him.  Rogers quickly left the apartment without taking any property.  Police later found Rogers in possession of the laptop computer that had been stolen from Cadiente's house.  GPS data from Rogers' electronic monitoring bracelet showed he was in the area of Cadiente's house on the day the laptop was stolen.  The GPS data also showed Rogers was in the area of Aldama's apartment around the time of that burglary.

1. *The Burglary of Holly Cadiente's Residence*

Holly Cadiente lived with two roommates in a three-bedroom house at 611 South Eighth Street in San Jose.  On August 5, 2011, between 6:00 and 6:30 a.m., Cadiente left the house to attend a funeral in Turlock.  She left her white Apple MacBook laptop computer in her bedroom.  She had owned the laptop for at least one year.  The bedroom door did not have a lock.

Cadiente returned home around 4:00 or 5:00 p.m.  After one or two hours at home, she discovered her MacBook was missing, along with its power cord and the charger for her iPhone.  She saw no signs of forced entry, but the windows had been left open and the screens were not well secured.  Her bedroom did not appear to be ransacked, and nothing else appeared to be missing from the house.  She reported the missing laptop to the police.

On September 10, 2011, around 1:00 a.m., the police responded to a report of a disturbance outside Molly Magee's bar in Mountain View.  The police found Rogers

2

sitting in a car parked behind the bar. Upon learning Rogers was on parole, the police searched the car. They found a black bag containing a white Apple laptop and a bottle with an unknown liquid inside.[2] The police did not confiscate the laptop at that time.

2. *The Burglary of Enrique Aldama's Residence*

In October 2011, Enrique Aldama lived in an apartment complex at 282 East Younger Avenue in San Jose. At trial, he testified as follows.

A few days before October 10, 2011, between 4:00 and 7:00 a.m., a man entered Aldama's apartment uninvited. At the time, Aldama was sleeping on a couch in the living room. All the lights in the apartment were turned off. Aldama woke up when he heard the creaking sound of the door opening. When he opened his eyes, Aldama saw the man standing two or three feet inside the apartment. The man, whom Aldama had never seen before, had not knocked or announced his presence. He was wearing a dark blue hooded sweatshirt and dark jeans. He had a large black bag with red trim hanging on his shoulder. Aldama jumped up off the couch and told the man to get out. The man put his hands up to his shoulders, quickly stepped back out of the apartment, and ran down the stairs outside the apartment. The encounter lasted about six seconds. Aldama did not call the police at that time. He saw no signs of forced entry.

3. *Subsequent Events*

On October 10, 2011, around 1:40 a.m., Aldama heard someone walking and talking on the phone outside his window. When Aldama went outside to investigate, he saw someone walking across the sidewalk area in front of the apartment complex. Based on the man's clothes, Aldama recognized him as the person who had entered his apartment a few days before. The man was carrying the same bag Aldama had seen when the man entered Aldama's apartment. Aldama's girlfriend called the police.

---

[2] According to the probation report, subsequent testing showed the liquid to be choral hydrate.

3

The police arrived soon thereafter and detained Rogers at the intersection of North Sixth Street and East Younger Avenue. After searching the bag in Rogers' possession, the police found an Apple MacBook laptop, an Apple iPad, and a power cord. The police found Cadiente's name in the laptop and contacted her to inform her they had recovered it. Cadiente met with the police, examined the laptop, and confirmed it was hers. At that point, police arrested defendant. The police asked Cadiente to look at a suspect sitting in the back of a police car, but she did not recognize the person.

After police returned the laptop to Cadiente, she noticed that someone had put videos, music, and photographs on it. Some of Cadiente's personal files were still on the laptop, but most of them had been deleted. The newly added files on the laptop included a digital photograph of Rogers taken with the laptop's built-in camera. The filename associated with the photograph included the date August 7, 2011. Rogers told police he had purchased the laptop from a friend for $180 in April 2011.

4. *Evidence of Defendant's Location Based on Electronic Monitoring*

Rogers was wearing an electronic monitoring ankle bracelet in 2011. John Defant, a manager for 3M Electronic Monitoring (3M), testified as an expert in the operation and use of the 3M electronic monitoring device worn by Rogers. Through Defant's testimony, the prosecution presented evidence of Rogers' locations at the relevant times based on data from GPS receivers monitoring the signals from Rogers' bracelet. The data showed Rogers was near the southwest side of the intersection of East Reed Street and South Eighth Street between 7:05 a.m. and 7:14 a.m. on August 5, 2011. The data also showed Rogers was in the area of East Younger Avenue and North Seventh Street between 4:00 a.m. and 4:33 a.m. on October 7, 2011. He was in the same area again between 1:35 a.m. and 1:50 a.m. on October 10, 2011.

Defant testified that 90 percent of the data points collected from the devices accurately show the device's location within a radius of ten meters or less. However, the level of precision varies depending on the quality of the satellite signals tracking the

4

device.  With respect to the data points collected from Rogers' bracelet between 7:05 a.m. and 7:14 a.m. on August 5, 2011, most of the data points exhibited a good or "very good" level of precision.  The levels of precision for the various points ranged from a radius of 16 feet to 177 feet.  Defant also opined that the data points were reasonably reliable as a whole because multiple points gathered in quick succession showed the device in the same area.  With respect to the data points collected on October 7, 2011, the levels of precision ranged from 13 feet to 46 feet.

On cross-examination, Defant conceded 3M had previously lost a bid to provide electronic monitoring services to the state because of alleged inaccuracy issues.  The state claimed the devices had failed in 46 out of 102 tests due to inaccuracy and reliability problems.  However, Defant testified that he disputed the state's claims and identified inaccuracies in the state's testing results.

5.  *Defense Evidence*

Dorothy Robinson, Rogers' mother, testified in his defense as follows.  Rogers was born on October 7, 1982.  He was homeless in October 2011, but she saw him five or six times a week when he visited her home to bathe, eat, or change his clothes.  Rogers could not spend the night at Robinson's home because he was on parole.

On October 7, 2011, Robinson gave Rogers several items for his birthday.  These included a dark blue flannel sweatshirt with a hood, a black shirt, and a black shoulder bag with red writing on it.  She gave the items to Rogers at her home around 5 p.m.  However, when Rogers left, he did not take the items with him.  The items remained at Robinson's home until he picked them up four days later on October 11.  When shown photographs of the bag found in Rogers' possession at his arrest, Robinson confirmed it was the bag she had given him.

B.  *Procedural Background*

The first amended information (the operative charging document) charged Rogers with four counts:  Count One—Possession of chloral hydrate, a controlled substance

(Health & Saf. Code, § 11377, subd. (a)); Counts Two and Three—First degree burglary (Pen. Code, §§ 459, 460, subd. (a))[3]; and Count Four—Receiving stolen property (§ 496, subd. (a)). The information alleged Rogers had suffered two prior strike convictions and two serious felony convictions. (§§ 667, subds. (a), (b)-(i), 1170.12.) The information further alleged Rogers had served a prior prison term for each of the prior strike convictions. (§ 667.5, subd. (b).)

After Rogers waived his right to a jury trial, the trial court severed Count One and held a bench trial on the remaining counts. The court found Rogers guilty on Counts Two, Three, and Four. Rogers pleaded no contest on Count One, admitted the two prior strikes and serious felony convictions, and admitted one prior prison term.

At sentencing, the trial court granted Rogers' motion under *Romero*[4] and struck one of the prior strike convictions. The court then imposed a total term of 22 years in state prison, composed of the following consecutive terms: The principal term of eight years (double the midterm) on Count Three; two years eight months (one-third the doubled midterm) on Count Two; one year four months (one-third the doubled midterm) on Count One; and five years each for the two remaining prior serious felony convictions. The court stayed the sentence on Count Four under section 654 and struck the prior prison term.

## II. DISCUSSION

A. *Legal Principles*

"The crime of burglary consists of an act—unlawful entry—accompanied by the 'intent to commit grand or petit larceny or any felony.' (§ 459.) One may b[e] liable for burglary upon entry with the requisite intent to commit a felony or a theft (whether felony or misdemeanor), regardless of whether the felony or theft committed is different from that contemplated at the time of entry, or whether any felony or theft actually is

---

[3] Subsequent undesignated statutory references are to the Penal Code.
[4] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

6

committed." (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042, fn. omitted.) "A necessary element to this crime is that the intent to commit the theft or felony must exist at the time of entry. [Citation.] However, in reviewing the sufficiency of evidence to support a burglary finding, the requisite intent is rarely demonstrated by direct proof, and as a result, may be inferred from facts and circumstances. [Citation.]" (*In re Leanna W.* (2004) 120 Cal.App.4th 735, 741.) "Burglarious intent can reasonably be inferred from an unlawful entry alone. [Citation.]" (*People v. Jordan* (1962) 204 Cal.App.2d 782, 786.) "[E]ven if no crime was committed after entry into the structure, an intent to commit theft at the time of entry may be inferred from flight from the premises. [Citation.]" (*People v. Moody* (1976) 59 Cal.App.3d 357, 363 (*Moody*).)

"In reviewing a criminal conviction challenged as lacking evidentiary support, ' "the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' " (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496, quoting *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

B. *Sufficiency of the Evidence for the Burglary at Cadiente's Residence*

Rogers contends the evidence was insufficient to support a conviction for the burglary at Cadiente's house. Rogers concedes he was in possession of the stolen MacBook, but he contends no reasonable trier of fact could find he entered Cadiente's residence. The Attorney General contends substantial evidence supports an inference that Rogers was the person who entered Cadiente's house to steal her laptop. We conclude substantial evidence supported the conviction.

Although the prosecution presented no eyewitnesses to Rogers' presence at the house, the prosecution presented GPS data from his electronic monitoring device to show he was in the area of the house around 7:00 a.m. on the day of the burglary. The data showed Rogers was in the vicinity of the house for at least 10 minutes. While the

prosecution presented no evidence of forced entry, Cadiente testified that the windows were open, and the screens could be easily removed. Rogers points to alleged inaccuracies in the 3M monitoring devices, but the prosecution's expert disputed those inaccuracies. The trial court apparently credited the expert's testimony. The determination of a witness's credibility and the resolution of conflicting evidence properly fall within the purview of the factfinder.

Furthermore, Rogers' possession of the laptop soon after the burglary tends to identify him as the burglar. Rogers concedes he was in possession of the laptop. He claimed he had purchased the computer in April 2011, but Cadiente had owned the computer for at least a year before the burglary. Rogers' false statement about the duration of his possession of the laptop implied a guilty state of mind. Moreover, examination of the laptop showed that files had been added to the computer soon after it was taken. Among others, a file showing a photograph of Rogers taken with the laptop's camera was dated August 7, 2011, only two days after the burglary.

We conclude the above evidence was sufficient to show Rogers entered Cadiente's house with the intent to commit theft. Accordingly, this claim is without merit.

C. *Sufficiency of the Evidence for the Burglary at Aldama's Residence*

Rogers contends the evidence was insufficient to support a conviction for the burglary at Aldama's apartment. Rogers does not dispute that substantial evidence shows he entered the apartment, but he contends no reasonable trier of fact could find he entered with the intent to commit theft. The Attorney General contends substantial evidence supported the inference that Rogers intended to commit theft when he entered the apartment.

Rogers points to several facts in support of his claim. For example, he only entered Aldama's apartment momentarily, and there was no evidence of forced entry. Nothing in the apartment was taken or disturbed, and Aldama saw no need to call the police. But one can reasonably infer that Rogers' entry was brief only because Aldama,

8

sleeping on a couch in the living room, heard Rogers enter and confronted him immediately. At that point, Rogers rapidly exited the apartment and ran away. A factfinder could reasonably infer that Aldama interrupted Rogers before he had a chance to steal anything. Furthermore, Rogers offers no alternative explanation for why he entered the apartment uninvited and unannounced at an hour when the occupants were likely to be asleep. His rapid flight from the apartment further supports a finding of burglarious intent. (*Moody*, *supra*, 59 Cal.App.3d at p. 363.)

The prosecution also introduced evidence of a prior burglary conviction suffered by Rogers in 2004. In that case, Rogers entered the victim's apartment through an open window around 9:30 a.m. The victim, like Aldama, was sleeping in the living room. She awoke and saw Rogers trying to remove a DVD player from the apartment. Rogers fled and police detained him a short distance away. In the case at bar, the trial court admitted evidence of the 2004 burglary under Evidence Code section 1101, subdivision (b), for the limited purpose of showing Rogers' intent in the Aldama burglary. Rogers' actions in the 2004 burglary bore sufficient similarity to his conduct in the latter burglary to support the inference that he entered Aldama's apartment with burglarious intent.

For the reasons above, we conclude the record contains substantial evidence to support a finding that Rogers entered Aldama's residence with the intent to commit theft. Accordingly, this claim is without merit.

D. *Unauthorized Penalty Assessments*

Rogers contends the trial court erred by imposing 300 percent penalty assessments on various fines and fees. He contends the maximum authorized penalty assessment was 170 percent under Government Code section 76000. The Attorney General concedes that Government Code 76000 does not allow for a 300 percent penalty assessment, but she argues that other penalty assessments may apply. She further contends Rogers forfeited his claim by failing to object below.

9

The trial court imposed the following fines, fees, and penalty assessments, among others: (1) a $50 criminal lab analysis fee plus a 300 percent penalty assessment; (2) a $150 drug program fee plus a 300 percent penalty assessment; (3) a $10 fine plus a 300 percent penalty assessment; and (4) a $70 AIDS education fine plus a 300 percent penalty assessment. Rogers lodged no objections and waived his right to a hearing on his ability to pay.

The parties agree that the trial court imposed the proper base amounts for the above fines and fees. However, the parties disagree on the proper amount of the penalty assessments. Rogers points to Government Code section 76000, providing in part: "Except as otherwise provided elsewhere in this section, in each county there shall be levied an additional penalty in the amount of seven dollars ($7) for every ten dollars ($10), or part of ten dollars ($10), upon every fine, penalty, or forfeiture imposed and collected by the courts for all criminal offenses . . . ." (Gov. Code, § 76000, subd. (a)(1).) This code section authorizes a 70 percent penalty assessment in addition to the base fine.

As the Attorney General points out, however, other code sections impose additional assessments, including: (1) a 100 percent state penalty assessment (§ 1464, subd. (a)(1)); (2) a 20 percent state surcharge (§ 1465.7); (3) a 50 percent state court construction penalty (Gov. Code, § 70372); (4) a 20 percent penalty for emergency medical services (Gov. Code, § 76000.5); (5) a 10 percent DNA penalty (Gov. Code, § 76104.6, subd. (a)(1)); and (6) a 30 percent state-only DNA penalty (former Gov. Code, § 76104.7, subd. (a)).[5] (*People v. Hamed* (2013) 221 Cal.App.4th 928, 941.) Trial courts may generically refer to this bundle of additional penalties as "penalty assessments." (*People v. Sharret* (2011) 191 Cal.App.4th 859, 864.) Simple arithmetic shows these additional penalty assessments total 230 percent, which, together with the 70 percent penalty assessment under Government Code section 76000, equals 300 percent.

_____

[5] We apply the versions of these statutes in effect at the time of the offenses. (*People v. Voit* (2011) 200 Cal.App.4th 1353, 1372.)

We conclude the trial court properly calculated the total amount of the assessments. Accordingly, this claim is without merit.

### III.    DISPOSITION

The judgment is affirmed.

_____
WALSH, J.[*]


WE CONCUR:



_____
RUSHING, P.J.




_____
PREMO, J.




*People v. Rogers*
**H041299**

---

[*]Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.